In the Matter of Proving the Last Will and Testament of CHRISTY
FAHRENBACH, Deceased.

RUSSELL A. GILLETTE and WALTER C. GILLETTE, as Executors of the
Last Will and Testament of CHRISTY FAHRENBACH, Deceased,
Appellants; LOUISE M. MCMANUS and Others, Respondents.

Third Department, January 8, 1941.

*Ellsworth Baker*, for the appellants.

*Henry Temes* [*Lazarus I. Levine* of counsel], for the respondents.

HILL, P. J. Proponents appeal from a decree of the Sullivan
County Surrogate's Court, made after a trial by a jury, denying
probate to decedent's last will and testament dated June 17, 1938,
upon the ground of lack of mental capacity. Testator, seventy-
four or seventy-five years old, died on February 4, 1939, leaving
thirteen nephews and nieces. He was born in Germany and came
to this country when about five years old. The will, after directing
the payment of debts, bequeathed $1,000 to a niece, Lena F. Pugh,
and the remainder equally to his nephews, Walter C. and Russell
A. Gillette. The estate consisted of about $14,000 deposited in
savings banks. Until about fourteen years before he died, he
resided with his brother at Lackawaxen, Pa., and worked for the
Erie railroad, receiving wages of from one dollar and twelve cents
to three dollars daily, paying ten dollars a month board, which
was increased to fifteen dollars when his wages were increased.
After the brother's death, he continued to reside with the widow
until she requested an increased amount for board, when he left

and went to the home of his sister, Theresa Gillette, the mother of the residuary legatees, where he resided until her death in June, 1938. He then lived with the family of his nephews. His sister and nephews were engaged extensively in the poultry business, and he worked in connection therewith.

The will was drawn by an attorney residing in Lyndhurst, N. J., who was settling the estate of his sister Theresa. The attorney recites that shortly after the death of the sister, decedent exhibited to him a will in all respects like the one offered for probate except that Theresa was the residuary legatee and executrix, and asked what effect her death would have. The attorney, being uncertain as to whether the legacy to the sister had lapsed, recommended the drawing of a new will. (I quote from the record on appeal.) " I asked him ' what he wanted '— he said ' he wanted to name his nephews, Russell and Walter Gillette in place of his sister ' and I asked about Lena Pugh — Q. (interrupting) She is referred to in that document? A. Yes,— left a sum of money. Q. How much? A. A thousand dollars — and he said ' he wanted to leave that as it was,' and I asked him ' who he wanted named executors '— he said ' he wanted to name both his nephews.' " The will was so prepared and read to testator, who, being illiterate, signed by making a mark. The execution was witnessed by the attorney and his secretary, each testifying that he was of sound mind when he executed the will.

Testator was extremely prudent, if not niggardly, as to expenditures. The attorney for the contestants finds in this evidence of insanity, stating in his brief, " * * * it would seem that a man whose earnings were anywhere from $1.10 per day for many years to $3.00 a day at the time of the World War must have some mental quirk when, from such meager earnings, he could save a substantial sum of money." Testator talked very little on general subjects; however, his sister-in-law, with whom he resided for many years, says, " Q. When he talked at your place did he talk intelligently? A. He talked nice about work, but about nothing else." Evidence as to taciturnity was given by a neighbor. " Tell me, you testified that Chris cried — tell me about that — how did he cry? A. If you asked him a civilized question he would just stare at you and sometimes he would cry. Q. Did you ever ask him a civilized question? A. Yes. Q. Did you ever ask him an uncivilized question? A. Yes." He was not cleanly and changed his underclothing rarely. Some of the witnesses suggested that he slept in his clothing, although this was an inference from seeing him fully clothed early in the morning. The same witness who

testified as to the " civilized question " says: " Q. Did he wear a necktie? A. That was on all the while — he wore that the year round because he couldn't tie another one. Q. Did you ever see him tie a tie? A. Never. Q. Did he ever tell you he couldn't tie a tie? A. No. Q. Then you really don't know? A. Only by the looks of the same tie. Q. You assumed he couldn't? A. Yes. Q. But you never seen him tie a tie? A. No. Q. And he never told you he could? A. No. Q. Still you say he could't tie a tie? A. To my opinion. Q. You are giving us your opinion? A. Yes."

Most of the testimony as to mental incapacity is of the same trivial character as quoted, but it describes a lonely, frugal and unkempt old man, of low mentality, given to crying on occasions, particularly when he had a drink or two of beer. He was loyal to his employer, interested in his work, and for more than forty years did his tasks satisfactorily. He suffered from arteriosclerosis and chronic myocarditis in his latter days. Apparently he was opposed to bathing, and regarded the changing of underclothing as a nuisance. There is loose evidence that he fell down and cried, but no medical testimony that indicated a condition which would cause this. Testator made a normal will, he enriched those with whom he had lived, and further kept in mind his favorite niece.

For a person to have the mental capacity to make a will it is only necessary that he be able to think with sufficient clarity so that without prompting he is able to understand and carry out the business to be transacted; to hold in mind the extent and nature of his property and the natural objects of his bounty and the relation of one to the other. (*Matter of Heaton*, 224 N. Y. 22; *Matter of Burnham*, 234 id. 475; *Matter of Delmar*, 243 id. 7.)

The decree of the Surrogate's Court is reversed on the law and facts, with costs to appellants payable out of the estate.

The court finds that the testator, Christy Fahrenbach, at the time of the execution of the will, was of sound and disposing mind and memory and possessed testamentary capacity. The matter is remitted to the Surrogate's Court of Sullivan County for the entry of a decree admitting the will to probate.

CRAPSER, BLISS, SCHENCK and FOSTER, JJ., concur.

Decree of the Surrogate's Court reversed on the law and facts and objections dismissed, with costs to appellants payable out of the estate.

The court finds that the testator, Christy Fahrenbach, at the time of the execution of the will, was of sound and disposing mind and memory and possessed testamentary capacity. The matter is remitted to the Surrogate's Court of Sullivan County for the entry of a decree admitting the will to probate.