In the Matter of the Probate of the Will of Eva Coddington, Deceased. Cornelius D. Coddington, Appellant; William R. Peckham, Respondent.

Third Department, December 30, 1952.

*Frank Morse Roosa* for appellant.

*Hugh R. Elwyn* and *George F. Kaufman* for respondent.

Coon, J.  Eva Coddington died a resident of the city of Kingston, Ulster County, N. Y., on September 9, 1951, leaving a will executed by her on February 13, 1951, which has been admitted to probate by the Surrogate of Ulster County after a trial before the Surrogate without a jury.  The objectant appeals from the decree and the amended decree which admitted the will to probate.  Testatrix left her surviving as her only distributees, Cornelius D. Coddington, a nephew, and Muriel Southworth, a niece.  Objections to the probate of her will were filed only by Cornelius D. Coddington, and alleged only lack of testamentary capacity.  No undue influence, restraint or fraud is alleged.

Eva Coddington, decedent, was a maiden lady about seventy-five years of age.  She had resided for many years with her sister Mary Coddington, in a house which they owned jointly. She had been employed for a long period of years as a sales-lady in a department store until sometime in 1945, when her sister Mary became ill, and thereafter she remained at home, did all the housework and cared for her sister until the latter's death on April 9, 1949.  Mary left a will in which Eva was named as executrix and sole beneficiary.  Eva retained an attorney to probate Mary's will, and furnished him in detail with all of the necessary information, including relationships, dates, property involved and data for tax purposes, until Mary's estate was finally settled in January of 1950.

On August 24, 1949, Eva consulted the same attorney with reference to drafting her own will, and gave him accurate information concerning her property, relationships, and particularly mentioned her nephew and niece as her only distributees, and stated that she did not wish them to participate in her estate and directed the attorney to insert a clause to that effect in her will, stating that she believed they had ample assets of their own.  The following clause was dictated in her presence and inserted in the will: " Sixth.  My sole distributees are my nephew, Cornelius D. Coddington, of Troy, New York, and my niece, Muriel Southworth, of West Sand Lake, New York.  However, I make no provision in this Will for either my nephew, Cornelius D. Coddington, or my niece, Muriel South-worth, since it is my wish that my property shall be disposed of in accordance with the foregoing terms of this Will."  This will was subsequently properly executed.

On February 12, 1951, Eva called at the office of another attorney, and stated to him that she wished to revise her will that had been previously drawn.  At the attorney's request she returned home to obtain a copy of the previous will and make

a memo as to the changes she wished made. Upon her return she described in some detail her property and the exact disposition which she wished made thereof. The attorney discussed in detail with her the clause in her previous will, above quoted, and she stated that it was correct and that she did not wish to make any provisions for her nephew and niece, and gave her reasons therefor. On the following day she returned to the attorney's office, read the will, pronounced it satisfactory, and executed it before three subscribing witnesses. It contained the same clause as above quoted, and is the will in controversy.

Thereafter she continued to live in her own home, did her own housework and managed her own affairs, until May 7, 1951, when she evidenced signs of mental confusion, and on May 9, 1951, was placed in a nursing home, and on July 24, 1951, was committed to the Hudson River State Hospital, where she died on September 9, 1951.

Objectant's contention is that testatrix was, at the time of the execution of the will here under consideration, under the influence of an insane delusion that her nephew, Cornelius D. Coddington, and her niece, Muriel Southworth, were stealing or removing from her home various articles of furniture and personal belongings. Evidence was offered that on various occasions decedent had complained to others that articles of insignificant value were missing from her home, and either directly accusing or indicating a suspicion that her nephew and niece were responsible. A physician, a general practitioner, who had treated decedent and her sister Mary, testified that she was suffering from arteriosclerosis, and expressed an opinion that she was incompetent. A psychiatrist who had never seen decedent, in answer to a long hypothetical question, expressed a similar opinion. In cases involving testamentary capacity such medical opinion evidence assumes a relatively minor importance if there is ample direct evidence, as here, of the acts and statements of the testatrix demonstrating that she possessed the simple understanding required by law to make a testamentary disposition of her property.

On the other hand there is ample evidence from neighbors and associates that before and after the execution of the will in question decedent was active, managed her own affairs, took care of her own household, participated actively in the affairs of her church and Sunday school, and that her acts and conduct impressed them as rational. The attorney who drafted the will in question testified in detail as to instructions given him by decedent in which she indicated a complete understanding

of her property, her relatives, and her wishes. Her acts impressed the attesting witnesses as rational. Bearing in mind that there is no claim of undue influence or fraud, the will must be the result of her own instructions, and its very contents speak eloquently of decedent's understanding of the matter at hand. Moreover, nearly two years previously she had made a will containing the same clause disinheriting the objectant, and the evidence surrounding that transaction clearly indicates her complete understanding and intent at that time.

It is so well established that it seems superfluous to repeat, that to possess the mental capacity to make a will, a person must only "be able to think with sufficient clarity so that without prompting he is able to understand and carry out the business to be transacted; to hold in mind the extent and nature of his property and the natural objects of his bounty and the relation of one to the other. (*Matter of Heaton,* 224 N. Y. 22; *Matter of Burnham,* 234 *id.* 475; *Matter of Delmar,* 243 *id* 7.) " (*Matter of Fahrenback,* 261 App. Div. 43, 45, affd. 285 N. Y. 763.) Less capacity is required to enable one to make a will than to make other contracts. (*Matter of Bossom,* 195 App. Div. 339, 343.)

All elderly people suffer from arteriosclerosis. Many elderly people do and say strange things and magnify trivial instances, but the law has always jealously guarded their right to dispose of their property as they see fit if they possess the mental understanding outlined above. The evidence as a whole fails to demonstrate satisfactorily the existence of a mental delusion on the part of the decedent, and there is practically no evidence that, if one did exist, the provisions of decedent's will were the result thereof. The overwhelming weight of evidence leads directly to the conclusion that the decedent possessed the full testamentary capacity required by law, and that her act was not the result of anything but her fully comprehended wishes and desires in disposing of her property. There were no prejudicial errors in the rulings of the Surrogate on the admission of evidence.

The decree assesses costs against the objectant personally. While it is within the discretion of the Surrogate to do so, we do not think it should have been done in this case. There is some evidence tending to support objectant's contention, which negatives bad faith, and he should not be penalized for seeking a judicial determination in the matter.

The decree should be modified by reversing that part thereof which assesses costs against the objectant personally and modi-

fied to provide that costs be payable from the estate, and as so modified the decree should be affirmed, with costs payable from the estate.

FOSTER, P. J., HEFFERNAN, BREWSTER and BERGAN, JJ., concur.

Decree modified, on the law and facts, by reversing that part thereof which assesses costs against the objectant personally, and modified to provide that costs be payable from the estate, and as so modified, the decree is affirmed, with costs payable from the estate.