Pierson E. Hildreth, S.
This is a contested probate proceeding in which objections were filed on grounds of lack of due execution of the propounded instrument, lack of testamentary capacity, fraud and undue influence. Trial on framed issues was held before the court without a jury.
The evidence showed full compliance with requirements for proper execution, and at the conclusion of the trial the court granted proponent’s motion for judgment on framed issues 1, 2 and 3 which were as follows:
“ 1. Did Sidney A. Horton, the Testator, subscribe the paper offered for probate bearing date the 20th day of June, 1958, at the end thereof before at least two of the subscribing witnesses or acknowledge to each of them that the subscription appearing on said paper had been made by him?
“2. At the time of making such alleged subscription or acknowledgment, did the Testator declare to each of the subscribing witnesses that the paper offered for probate was his Last Will and Testament?
“ 3. Were there at least two subscribing witnesses, each of whom signed his or her name at the end of said paper at the request of the testator? ”
The court reserved decision with respect to framed issues 4, 5, 6, 7, 8 relating to testamentary capacity, fraud and undue influence.
Decedent executed his will June 20, 1958. He was an elderly man, aged 84, in poor physical condition due to arteriosclerosis and cancer. His wife executed her will at the same time. She too was elderly, about one year younger than her husband, and in poor physical condition due to an advanced tumor. In the court’s opinion, based on the testimony, they should properly be described as a fine elderly married couple, living together over 50 years, with the blessings of a full life in their memories.
Decedent’s will, as was his wife’s, was prepared by his attorney whom he had known over 20 years. At decedent’s request, the attorney met with them at their home on three successive days, June 18, 19 and 20, 1958, the first two in *845 connection with the preparation and the last time for execution. The property of decedent and his wife consisted of some cash, their homestead land and adjacent realty, partly vacant and partly improved with a bungalow. All the property was in their joint names.
The evidence indicates that each was concerned over the health of the other, over who would outlive the other and for how long, as well as being aware that neither was likely to live much longer. They inquired of their attorney as to what would happen to their property when both should die. ■ The result was that each decided to make a will. The terms were discussed, as well as family relationships, property and other details. Decedent’s wife was not feeling well at the time of the first meeting, so it was agreed the attorney return the following day. He did so, and the wills were further discussed. The wills were thereafter typed and the attorney returned the following day when decedent, as well as his wife, executed their respective wills. The wills were similar in content, each first left his or her property to the other, but in the event the other predeceased, general monetary bequests were given specified relatives of each, with the residue to decedent’s wife’s brother and said brother’s wife. The monetary bequests aggregated $1,800 if the estate after taxes and expenses exceeded $10,000 and $900 if the estate after taxes and expenses was less than $10,000, with provisions for abatement if the net residuary estate after taxes and expenses was not at least twice the amount of the specified monetary bequests.
Decedent’s distributees were a brother who survived him, two nephews and two nieces. Objections were filed by the administratrix of the brother’s estate.
From the testimony and upon all the evidence the court is of the opinion that decedent possessed the testamentary capacity requisite to make a valid will, that it was the product of his free, voluntary act, that he was not under restraint, and that there was no fraud or undue influence exercised upon him by anyone.
Old age is not inconsistent with testamentary capacity. The evidence of events at the time the will was prepared and executed indicates that decedent acted rationally and intelligently, that he knew how he wanted to dispose of his property and instructed his attorney accordingly. He knew the effect of the provisions, he did not act on sudden impulse, he sought and acted with his competent legal advisor. There is no convincing evidence whatever that any fraud, undue influence or deception was practiced by anyone. The same can be said *846 of the will of decedent’s wife. Decedent could dispose of his estate as he wished. He did not have to leave anything to his brother if he did not wish to. The provisions in the will reducing the bequests if the estate was less than a certain amount are sensible inasmuch as no one can tell how long life will continue and what expenditures might consume or diminish the estate before death.
Testator’s attorney and the attorney’s secretary testified to testator’s competency; the family physician visited decedent or his wife 24 times during April, May, June, July, 1958, seeing and talking with each at every occasion. He testified decedent was rational at all times and engaged in spontaneous, responsive, intelligent conversation except once in April. This included specifically visits on the days of June 18, 19 and 20, being days of the making of the will. The doctor states also that decedent “ went to pieces” immediately after his wife died, and he advised or concurred in deciding on a nursing home for him. This was, however, subsequent to the will. Other witnesses, including some produced 'by contestant, testified to testator’s rational conduct, except as to a few isolated mstances. A Masonic member who visited often regarded him normal always. A niece said he was rational except one day in May. A neighbor said he was incoherent ‘1 once in a great while ”. One who shaved him frequently said he always recognized him and was alright ‘ ‘ in every way ’ ’ during April and May. Contestant produced an expert witness who gave his opinion on a hypothetical question that decedent lacked testamentary capacity. He never saw decedent. Such opinion is insufficient evidence of testamentary capacity in view of all other evidence.
The attorney who had known decedent for many years and who prepared qnd attended to execution of the will saw him on each of three successive days at that time. His opinion is clear and definite that testator was fully possessed of testamentary capacity, was competent, free of restraint, knew the scope of his property, and the identity of those who had just or natural claims as the objects of his bounty.
The guides for determining testamentary capacity have often been expressed by the courts. Each case depends on its own factual situation. But in general, a testator must have sufficient intelligence and capacity to understand the nature and consequences of his testamentary act, to know the nature and extent of his property, and those who may have just or natural claims upon his bounty in its disposition. (Delafield v. Parish, 25 N. Y. 9; Matter of Coddington, 281 App. Div. 143, affd. 307 *847 N. Y. 181.) One may be able to make a will though afflicted with a fatal disease. (Hollis v. Drew Theological Seminary, 95 N. Y. 166.) A will is not necessarily rejected because testator does not make it until near death, nor because he is ill or weak. (Matter of McGraw, 9 App. Div. 372; Dobie v. Armstrong, 160 N. Y. 584, 161 N. Y. 641; Matter of Beneway, 272 App. Div. 463.) One need not have perfect mind or memory (Dobie v. Armstrong, supra, p. 593; Matter of Heaton, 224 N. Y. 22). An elderly person may have good days and poor days. (Cudney v. Cudney, 68 N. Y. 148.) Testamentary capacity is not destroyed retroactively by events happening after execution (George v. People, 180 Misc. 635, affd. 267 App. Div. 575).
There is a complete lack of evidence to sustain the objections based on fraud and undue influence. The Court of Appeals in Matter of Walther (6 N. Y. 2d 49) has stated on such matters:
“‘It must not be the promptings of affection; the desire of gratifying the wishes of another; the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent resistless power which the strong will , often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear * * * lawful influences which arise from the claims of kindred and family or other intimate personal relations are proper subjects for consideration in the disposition of estates, and if allowed to influence a testator in his last will, cannot be regarded as illegitimate or as furnishing cause fo.r legal condemnation ’. * * #
“ While the evidence in this case may be consistent with the hypothesis that the chief beneficiary induced the will by undue influence, the evidence is equally consistent with the assumption that the will expressed the decedent’s own voluntary intent. ‘ An inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference ’ ”.
There is no evidence in this case inconsistent with the assumption that decedent’s will expressed his own free voluntary desires. Contestant has failed to sustain the burden of proof on issues of fraud and undue influence. The effort is to infer fraud or undue influence by innuendo from facts and circumstances which do not necessarily result in that inference.
The court is satisfied that proponent has sustained the burden of proof on the issue of testamentary capacity, and that at the time of execution testator was competent to make a will and not under restraint.
*848 Accordingly .the court determines the issues 4, 5, 6, 7, 8 in favor of proponent. Proponent’s motion for judgment on such issues is granted. The motions of objectant are denied. The will is ordered to be admitted to probate.