Harry Gr. Herman, S.
This contested probate proceeding was tried by the court without a jury. The objections were filed by charities named in a prior will and raised as issues due execution and testamentary capacity as well as fraud and undue influence.
The decedent died on April 20, 1961. She had executed the purported will on April 5, 1961. The attorney, who had been called to draw the instrument by the decedent’s companion or nurse, first came to her home on April 3, 1961, discussed the provisions of the will with her, and returned two days later with his secretary. The draftsman and his secretary witnessed the execution of said instrument.
All of the decedent’s property was left to the daughter of this companion or nurse. Under a prior will, also filed with the court, and dated April 8, 1952, decedent had left virtually all of her estate to certain religious corporations. The companion or nurse was a friend and next-door neighbor of the decedent and for approximately three years prior to her death had taken care of the decedent and received a weekly salary for her services.
The decedent was unmarried and her nearest relative was a cousin who would visit her occasionally. She lived alone in a large house but made use only of the sitting room on the ground floor where she spent all of her time — she ate and slept there. She was concededly untidy, irascible, impatient and her physical surroundings were squalid. Her physician testified that he had treated her for about three years prior to her death, that she was about 73 years old, suffered from hypertension, edema of the ankles, arthritis and had developed an arteriosclerotic condition which became progressively worse. He testified that although she suffered from these illnesses she was nevertheless mentally alert. There was proof that the decedent would move around this room by supporting herself with the nearest piece of furniture, read a great deal, smoked cigarettes and would answer the telephone which was located close by her couch. Another neighbor who had been hired to clean the house testified that for the two months prior to her death he had engaged the decedent in conversation, some of *278 which was conducted in French when she discovered that he understood that language.
The beneficiary of the will, the daughter of decedent’s companion nurse, had been very friendly with decedent for many years and would visit her frequently; she was employed as a legal stenographer in a New York law office and had been one of the witnesses to the 1952 will. Prior to her death, in fact only a month before, decedent had turned over certain securities to this beneficiary which were registered in the name of the deceased and this beneficiary as joint tenants. A power of attorney had also been executed in favor of the mother, the companion nurse, who had signed checks for the decedent under this power of attorney for some months prior to April, 1961.
The contestants, to whom substantially all of the estate had been left under the 1952 will, called as witnesses the companion nurse, her daughter, the transfer agent who had registered the securities in the joint names, the physician, a druggist who had filled various prescriptions, and a practical nurse who had cared for the decedent for about five weeks while her regular companion nurse was on vacation. A cousin testified that the decedent rambled in her talk, that she would doze off while he talked to her, that she was forgetful and that she was unable to get around but always sat in her chair or couch; that she was physically unkempt and his efforts to move her near his home in Connecticut away from this squalor were fruitless.
The evidence established that the propounded instrument was executed in compliance with the provisions of section 21 of the Decedent Estate Law and the objections relating to due execution are dismissed. The attorney draftsman testified that on his first visit to the decedent she said that she wanted to draw a will and leave everything to “ Maree ” a daughter of a companion nurse, or if she predeceased the decedent, then to Maree’s mother and that the attorney draftsman was to act as executor.
Two days later the attorney visited the decedent with his secretary. The will was explained to decedent and read to her. She stated that she understood the will and that it expressed her wishes. She signed the instrument laboriously in the presence of the witnesses stating that it was her will and requesting both to sign it as witnesses, which they did in her presence and in the presence of each other.
No inquiry was made of the decedent as to the nature and extent of her property or as to her relatives and no information was volunteered by her as to these items. There was, however, testimony to the effect that decedent knew what she was doing and did it; that she was mentally alert, that her conversation was *279 intelligent and as above stated that she also conversed in French with a neighbor who was employed to clean the house and who understood this language.
That the decedent did not desire to provide for her nearest relative, a cousin, was evidenced also by the 1952 will which named the objecting religious corporations as her sole beneficiaries but omitted the cousin as a beneficiary.
Neither old age nor senility is inconsistent with testamentary capacity (Matter of Horton, 26 Misc 2d 843, affd. 13 A D 2d 506; Matter of Beneway, 272 App. Div. 463, 467-468) and slovenliness of the person or the manner of living is no disqualification (Matter of Cutter, 175 App. Div. 647; Matter of Schober, 90 Misc. 230; Matter of Whitmarsh, 133 Misc. 858). Upon all the evidence the court determines that at the time of execution of the propounded instrument the decedent possessed testamentary capacity and the objection relating to this issue is also dismissed.
As to undue influence and lack of freedom from restraint there was credible evidence that the decedent, herself unmarried, indicated her desire to assist the not-too-young next-door neighbor, also unmarried. She had known her for many years and apparently had developed at least some sympathy and possibly some affection for her. True it is that the mother, the companion nurse, was with the decedent almost daily for three years prior to her death, that she called the attorney who drafted the 1961 will and arranged for her medical attention. Objectants have failed to establish undue influence — there was no evidence of coercion or of restraint upon independent action and so far as appears the decedent did nothing against her free will and desire. On the contrary the evidence clearly establishes that she knew precisely what she was doing when she executed her will in April, 1961 and that the instrument was not executed under compulsion or restraint. Settle decree admitting the will of April 5,1961.