■ In the Matter of the Estate of EMMELINE ASHLEY, Deceased. MILTON A. GALAMISON, Appellant; JOHN A. SISMAN, Respondent.— In a probate proceeding, the proponent appeals from so much of a decree of the Surrogate's Court, Kings County, dated January 7, 1969, which (1) sustained an objection on the ground of lack of testamentary capacity, in accordance with the findings of a jury, and (2) denied probate. Decree affirmed insofar as appealed from, without costs. No opinion. Brennan, Acting P. J., Benjamin and Kleinfeld, JJ., concur; Hopkins and Munder, JJ., dissent and vote to reverse the decree insofar as appealed from and to grant probate to the propounded will, with the following memorandum: The Surrogate directed that the following three issues be tried before an advisory jury (CPLR 4212; SCPA 502, subd. 6): (1) whether the decedent possessed testamentary capacity to execute the will offered for probate; (2) whether the offered will was procured by the undue influence of Milton A. Galamison or Jesse B. Barber or others; and (3) whether the offered will was procured by the fraud or Galamison or Barber or others. At the end of the trial the Surrogate dismissed from the jury's consideration the issue as to fraud and submitted the remaining two issues to the jury. The jury rendered a verdict finding (1) that the decedent did not possess testamentary capacity and (2) that the will had not been procured by undue influence. The Surrogate denied appellant's motion to set aside the verdict of the jury as to the lack of testamentary capacity of the decedent and denied probate. The advisory verdict was, of course, not binding on the Surrogate; he was free to confirm or reject it, in whole or in part (CPLR 4403; cf. *Ruder* v. *Lincoln Rochester Trust Co.,* 18 A D 2d 763). In our opinion, the evidence was insufficient to establish the decedent's lack of testamentary capacity. The decedent was survived by one heir, her brother, who interposed the objections to probate. The will in issue left the decedent's entire estate to the church of which she had been a member, and appointed its pastor as executor. The record indicates that while the decedent was in a nursing home the pastor of the church under a power of attorney collected the rents from her house and paid her expenses. The evidence presented by the contestant showed no more than that the decedent was ill and at times had spells of talking loudly and throwing objects around, and had vacillated between a close relationship with her brother and her nephew and expressions of antagonism to them. On the other hand, her doctor who had attended her testified that the decedent suffered from Parkinson's disease, which, though it causes deterioration in the physical well-being, does not affect the lucidity of the patient's mind; and in the opinion of her doctor the decedent was mentally competent. Moreover, the director of nurses at the nursing home testified that in her opinion the decedent was rational. Though the decedent may have acted strangely on occasion and indulged in the prerogative or petty complaints and grievances against her relatives, so often exercised by elderly persons, the test of testamentary capacity is not whether the decedent exhibited conduct beyond the ordinary. It is whether she was " able to think with sufficient clarity so that without prompting [s]he is able to understand and carry out the business to be transacted; to hold in mind the extent and nature of * * * [her] property and the natural objects of * * * [her] bounty and the relation of one to the other" (*Matter of Fahrenbach,* 261 App. Div. 43, 45, affd. 285 N. Y. 763). Neither old age nor senility is inconsistent with testamentary capacity (*Matter of Horton,* 26 Misc 2d 843, affd. 13 A D 2d 506; *Matter of Beneway,* 272 App. Div. 463). Less capacity is required to make one's will than to make a contract (*Matter of Bossom,* 195 App. Div. 339, 343). We need not account for

the decedent's choice between her brother and her church; it is enough that her choice was a rational one. Under the evidence, it is unquestioned that the decedent's relationship with the church was of long standing and it was understandable that she should favor it under the circumstances of the case. In our opinion, the evidence as to her ability to meet the standards of mental competency was clear and convincing; and the evidence presented by the contestant was insufficient to create an issue for the jury. The decree should be reversed insofar as appealed from and the will admitted to probate.