# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**934**

**CA 11-01650**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND SCONIERS, JJ.

---

IN THE MATTER OF THE ESTATE OF STEVEN
MAKITRA, SR., DECEASED.
--------------------------------------------          MEMORANDUM AND ORDER
WILLIAM T. MAKITRA, AS EXECUTOR OF THE
ESTATE OF STEVEN MAKITRA, SR., DECEASED,
PETITIONER-RESPONDENT;

STEVEN A. MAKITRA, JR., OBJECTANT-APPELLANT;

PATRICK MCALLISTER, ESQ., GUARDIAN AD LITEM
FOR SHANE GLASS, RESPONDENT.

---

BETZJITOMIR & BAXTER, LLP, BATH (SUSAN BETZJITOMIR OF COUNSEL), FOR
OBJECTANT-APPELLANT.

JONES & SKIVINGTON, GENESEO (DANIEL MAGILL OF COUNSEL), FOR
PETITIONER-RESPONDENT.

---

Appeal from a decree of the Surrogate's Court, Steuben County (Marianne Furfure, S.), entered March 30, 2011. The decree dismissed the objections of Steven A. Makitra, Jr., revoked letters testamentary issued to Steven A. Makitra, Jr., and admitted to probate the last will and testament of Steven Makitra, Sr.

It is hereby ORDERED that the decree so appealed from is unanimously affirmed without costs.

Memorandum: On appeal from a decree that rejected his claims that the November 2007 will of decedent was invalid, objectant contends that decedent lacked testamentary capacity when he executed the will. Objectant further contends that petitioner, decedent's nephew, exercised undue influence on decedent at the time decedent executed his will, and that Surrogate's Court improperly used the Dead Man's Statute to preclude objectant from testifying at trial. We affirm.

Decedent made his first will in 2002, naming objectant, his son, as the sole beneficiary of his estate. Some years later, in 2007, decedent executed a new will, which still left the bulk of his estate to objectant but also left some real and personal property to other family members, including petitioner. Objectant contends that decedent was not competent to execute a will in 2007 because his health was failing and he was suffering from dementia. The Surrogate properly rejected that contention. In a will contest, " '[t]he

proponent has the burden of proving that the [decedent] possessed testamentary capacity and the court must look to the following factors:  (1) whether [he] understood the nature and consequences of executing a will; (2) whether [he] knew the nature and extent of the property [he] was disposing of; and (3) whether [he] knew those who would be considered the natural objects of [his] bounty and [his] relations with them' " (*Matter of Kumstar*, 66 NY2d 691, 692, *rearg denied* 67 NY2d 647).  Old age and bad health, including dementia, when a will is executed are "not necessarily inconsistent with testamentary capacity . . . as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made" (*Matter of Buchanan*, 245 AD2d 642, 644, *lv dismissed* 91 NY2d 957; *see Matter of Hinman*, 242 AD2d 900, 900-901; *Matter of Buckten*, 178 AD2d 981, 982, *lv denied* 80 NY2d 752).  Where there is direct evidence that the decedent possessed the understanding to make a testamentary disposition, even "medical opinion evidence assumes a relatively minor importance" (*Matter of Coddington*, 281 App Div 143, 145, *affd* 307 NY 181).

Here, there was ample evidence that decedent was of sound mind and memory when he executed his November 2007 will.  Aside from the trial testimony of several disinterested witnesses to that effect, petitioner's lawyer introduced in evidence at trial a videotape that was made of decedent as he reviewed and signed the will.  The tape was reviewed by the Surrogate before she rendered her decision.  Based upon our review of the record, including the videotape, we perceive no reason to disturb the Surrogate's findings, which are entitled to great weight inasmuch as they "hinged on the credibility of the witnesses" (*Matter of Thorne*, 108 AD2d 865, 865; *see Buckten*, 178 AD2d at 982-983).

We also reject objectant's contention that petitioner exercised undue influence over decedent in the making of the November 2007 will.  A will contestant seeking to prove undue influence must show the exercise of "a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [decedent] to do that which was against [his] free will" (*Kumstar*, 66 NY2d at 693 [internal quotation marks omitted]).  Undue influence must be proved by evidence " 'of a substantial nature' " (*Matter of Zirinsky*, 43 AD3d 946, 948, *lv denied* 9 NY3d 815, quoting *Matter of Walther*, 6 NY2d 49, 54), e.g., by evidence "identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (*Matter of Walker*, 80 AD3d 865, 867, *lv denied* 16 NY3d 711 [internal quotation marks omitted]).  Objectant failed to present such evidence.

Under the November 2007 will, petitioner was to receive only a joint tenancy interest in two small lots on Geneva Street in Bath (worth an estimated $5,650), whereas objectant was to receive the entire 95-acre family homestead and all of the real property and assets of decedent's real estate business.  Furthermore, although the November 2007 will benefitted decedent's nieces and nephews in addition to objectant, the will does not constitute an "unexplained departure from a previously expressed intention of the decedent"

(*Walther*, 6 NY2d at 55).  Rather, as decedent explained to others, including his sister and his lawyer, he simply wanted to benefit his nieces and nephews as well as his son, and gave good reasons for doing so.  One of those reasons was that the parcels of land devised to the nieces and nephews had been jointly owned by decedent and his twin brother, who predeceased decedent and was the father of the nieces and nephews to whom the parcels were devised.

We further reject objectant's contention that the Surrogate improperly used CPLR 4519, i.e., the Dead Man's Statute, to preclude objectant from testifying about his observations of decedent's mental capacity.  Such testimony was properly precluded under the statute, which is designed "to protect the estate of the [decedent] from claims of the living who, through their own perjury, could make factual assertions which the decedent could not refute in court" (*Matter of Wood*, 52 NY2d 139, 144).

Entered:  December 21, 2012                    Frances E. Cafarell
                                               Clerk of the Court