Matter of Burrows (2022 NY Slip Op 01936)





Matter of Burrows


2022 NY Slip Op 01936


Decided on March 18, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, LINDLEY, CURRAN, AND DEJOSEPH, JJ.


969 CA 20-01042

[*1]IN THE MATTER OF THE ESTATE OF RALPH W. BURROWS, ALSO KNOWN AS R.W. BURROWS, ALSO KNOWN AS RALPH WILLIAM BURROWS, ALSO KNOWN AS BILL BURROWS, DECEASED. JI TING WANG BURROWS, ALSO KNOWN AS JANE BURROWS, AND EVAN DREYFUSS, PETITIONERS-RESPONDENTS; MARCIA BURROWS, AS GUARDIAN OF AVA BURROWS AND AUDREY BURROWS, RESPONDENT-APPELLANT.






MCCARTER & ENGLISH, LLP, NEW YORK CITY (GERARD G. BREW OF COUNSEL), AND KEENAN AND KEENAN, P.C., UTICA, FOR RESPONDENT-APPELLANT.
MCCARTHY FINGAR LLC, WHITE PLAINS (ROBERT H. ROSH OF COUNSEL), FOR PETITIONERS-RESPONDENTS.


 Appeal from an order of the Surrogate's Court, Herkimer County (John H. Crandall, S.), dated May 28, 2020. The order, among other things, granted the motion of petitioners for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Marcia Burrows (respondent), as guardian of Ava Burrows and Audrey Burrows (children), appeals from an order that, inter alia, granted petitioners' motion for summary judgment dismissing both respondent's objections to the probate of decedent's will and a petition to set aside the accompanying revocable trust based on, inter alia, lack of capacity and undue influence; denied respondent's cross motion for, inter alia, partial summary judgment declaring that petitioners had the burden of proving that the will and trust were not products of undue influence; and admitted decedent's will to probate. We affirm.
Initially, we conclude that Surrogate's Court properly granted that part of petitioners' motion for summary judgment dismissing the objection with respect to decedent's testamentary capacity. "It is the indisputable rule in a will contest that '[t]he proponent has the burden of proving that the testator possessed testamentary capacity and the [Surrogate] must look to the following factors: (1) whether [the testator] understood the nature and consequences of executing a will; (2) whether [he] knew the nature and extent of the property [he] was disposing of; and (3) whether [he] knew those who would be considered the natural objects of [his] bounty and [his] relations with them' " (Matter of Kumstar, 66 NY2d 691, 692 [1985], rearg denied 67 NY2d 647 [1986]; see Matter of Alibrandi, 104 AD3d 1175, 1175 [4th Dept 2013]; Matter of Castiglione, 40 AD3d 1227, 1228 [3d Dept 2007], lv denied 9 NY3d 806 [2007]). "Old age and bad health . . . when a will is executed are 'not necessarily inconsistent with testamentary capacity . . . as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made' " (Matter of Makitra, 101 AD3d 1579, 1580 [4th Dept 2012]; see Alibrandi, 104 AD3d at 1175-1176; Matter of Buchanan, 245 AD2d 642, 644 [3d Dept 1997], lv dismissed 91 NY2d 957 [1998]).
Here, petitioners satisfied their initial burden on the motion of establishing decedent's testamentary capacity through submission of, inter alia, the self-executing affidavit and the SCPA [*2]1404 hearing testimony of the witnesses to the will's execution—i.e., decedent's estate attorney and his personal accountant—as well as testimony of decedent's longtime executive assistant (see Matter of Giaquinto, 164 AD3d 1527, 1528 [3d Dept 2018], affd 32 NY3d 1180 [2019]; Alibrandi, 104 AD3d at 1176; Matter of Murray, 49 AD3d 1003, 1004-1005 [3d Dept 2008]). Those individuals all testified that, despite his terminal illness, decedent was not operating under any mental impairment at the time of the will's execution and was entirely aware of his actions and his intentions with respect to the will. Indeed, those witnesses confirmed that decedent did not demonstrate any signs of cognitive decline; appeared to be fully competent, coherent, and aware when he executed the will; and understood the nature of the document that he was signing and what it accomplished. We also note that the execution of the will and the resolution of decedent's estate was the culmination of prolonged discussions between decedent and his estate attorney, as well as other advisors, and that decedent was an active participant throughout the estate planning process. The witnesses also testified that decedent repeatedly stated that he deliberately did not provide for the children in the will because he had already provided for them in a separate trust, thereby establishing that decedent had stated his intentions with respect to the children and had considered the consequences of his decision not to include them in the will (see Alibrandi, 104 AD3d at 1177; Matter of Walker, 80 AD3d 865, 866-867 [3d Dept 2011], lv denied 16 NY3d 711 [2011]).
In opposition, respondent failed to raise a triable issue of material fact with respect to decedent's capacity to execute the will. Respondent argued that there were questions of fact whether decedent had capacity to execute the will based on the effect his terminal cancer and its treatment had on his mind, alleging in particular that he suffered from "chemo brain" and was impaired by his use of morphine. As noted above, however, bad health—in this case a terminal cancer diagnosis—is not necessarily inconsistent with testamentary capacity because the relevant inquiry is whether decedent was competent at the time of the will's execution (see Alibrandi, 104 AD3d at 1177; Makitra, 101 AD3d at 1580; Murray, 49 AD3d at 1005). To the extent respondent contends that the Surrogate erred in granting petitioners' motion insofar as it sought to dismiss the testamentary capacity objection, thereby precluding her from introducing at trial expert medical testimony showing that decedent's illness made him incompetent to execute the will, we note that such "medical opinion evidence assumes a relatively minor importance" where, as here, "there is direct evidence that . . . decedent possessed the understanding to make a testamentary disposition" (Makitra, 101 AD3d at 1580 [internal quotation marks omitted]; see Matter of Coddington, 281 App Div 143, 145 [3d Dept 1952], affd 307 NY 181 [1954]). In any event, respondent has failed to present any evidence, medical or otherwise, to show that—at the time the will was executed—decedent lacked the requisite capacity or that he was mentally incompetent as a consequence of his illness. Indeed, all of the evidence in the record supports petitioners' assertion that decedent was lucid and of sound mind at the time in question (see Giaquinto, 164 AD3d at 1529-1530). At best, respondent merely speculates that the effects of decedent's illness and the treatment for that condition undermined his capacity when he executed the will, which is insufficient to raise a triable issue of fact and prevent probate of the will (see Matter of Bodkin [appeal No. 3], 128 AD3d 1526, 1528 [4th Dept 2015]; Matter of Eshaghian, 54 AD3d 860, 861 [2d Dept 2008]).
We further conclude that the Surrogate properly granted that part of petitioners' motion for summary judgment dismissing the undue influence objection with respect to the will. "A . . . contestant seeking to prove undue influence must show the exercise of a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [decedent] to do that which was against [his] free will" (Makitra, 101 AD3d at 1581 [internal quotation marks omitted]; see Kumstar, 66 NY2d at 693; Alibrandi, 104 AD3d at 1177-1178). "Undue influence must be proved by evidence of a substantial nature . . . , e.g., by evidence identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (Makitra, 101 AD3d at 1581 [internal quotation marks omitted]). "Mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact" (Alibrandi, 104 AD3d at 1178 [internal quotation marks omitted]; see Walker, 80 AD3d at 867).
Here, we conclude that petitioners met their initial burden on the motion to show that the will was not the product of undue influence (see Alibrandi, 104 AD3d at 1177-1178; Matter of Coniglio, 242 AD2d 901, 902 [4th Dept 1997]). The evidence establishes that, at the time of the [*3]will's execution, petitioner Ji Ting Wang Burrows (surviving spouse) was asked to leave the room so decedent could discuss the will with his advisors. The evidence also suggests that the surviving spouse was, at most, a passive participant in decedent's estate planning. Further, the testimony and affidavits submitted from decedent's advisors establish that decedent was actively engaged and clear about his intentions with respect to the will. As noted above, there was also testimony establishing that decedent intentionally decided not to include the children in the will inasmuch as he had already provided for them elsewhere. Petitioners also submitted respondent's deposition testimony in which she stated that, although she had a "personal belief" that the surviving spouse had exerted pressure on decedent, she had no documentary or other proof to substantiate that assertion.
Respondent failed to raise a triable issue of fact in opposition inasmuch as she offered nothing but speculative allegations that petitioners actually influenced decedent's distribution of his assets through the will (see Alibrandi, 104 AD3d at 1178; Matter of Dubin, 54 AD3d 945, 946-947 [2d Dept 2008]; see also Lewis v DiMaggio, 151 AD3d 1296, 1299-1300 [3d Dept 2017]). At best, the circumstantial evidence respondent relies on to show petitioners' undue influence goes only to petitioners' opportunity or motive, not to whether they actually wielded such influence on decedent (see Matter of Branovacki, 278 AD2d 791, 792 [4th Dept 2000], lv denied 96 NY2d 708 [2001]; Coniglio, 242 AD2d at 902). To the extent that respondent relies on a single email exchange between the surviving spouse and decedent's estate attorney to show that the surviving spouse exerted influence on the will, we note that respondent's argument ignores the numerous other emails from around the same time demonstrating decedent's active participation in his estate planning. Further, the email from the surviving spouse belies respondent's contention that the surviving spouse controlled the estate negotiations because the email merely conveyed decedent's wishes to his attorney and, notably, decedent was copied on the email. Decedent's decision not to provide for the children in the will—a departure from his prior estate plan—did not, by itself, raise issues of fact with respect to whether the will was the product of undue influence because respondent did not controvert the testimony establishing that decedent knowingly departed from the prior estate plan based on his conclusion that he had already sufficiently provided for the children in other ways.
We also conclude that the Surrogate properly granted that part of the motion seeking summary judgment dismissing the petition to set aside the revocable trust. Assuming, arguendo, that, as respondent contends, the level of capacity required to execute a revocable trust is the same as that required to execute a contract (see Matter of Edson, NYLJ, Jul. 14, 1997 at 31, col 1, at 31, col 2, 1997 NYLJ LEXIS 440, *5-6 [Sur Ct, Suffolk County 1997]; 2 Harris, NY Estates: Probate, Administration and Litigation § 25:24 [2021]; Eve Preminger et al., Trusts and Estates Practice in New York § 5:203 [West's NY Prac Series 2021]; cf. Matter of Cuttitto Family Trust, 10 AD3d 656, 657 [2d Dept 2004]; Matter of Aronoff, 171 Misc 2d 172, 177 n 6 [Sur Ct, NY County 1996]), we conclude that petitioners satisfied their initial burden on the motion of establishing decedent's capacity to create the revocable trust. In support of their motion, petitioners submitted, inter alia, the affirmation of decedent's estate attorney who opined that, based on his extensive correspondence and communication with decedent in the months leading up to the trust's creation, decedent had the capacity to enter into a contract. Indeed, he noted that decedent was able to read and write, was aware of each and every provision in the trust and the nature and effect of his actions, and could understand and articulate the complexities of the assets that were being placed in the trust. In short, decedent had the capacity to create the trust because his "mind was [not] so affected as to render him . . . wholly and absolutely incompetent to comprehend and understand the nature of the transaction" (Matter of Mildred M.J., 43 AD3d 1391, 1392 [4th Dept 2007] [internal quotation marks omitted]; see generally Thomas v Gray, 121 AD3d 1091, 1092 [2d Dept 2014], lv denied 25 NY3d 961 [2015], rearg denied 25 NY3d 1196 [2015]; Feiden v Feiden, 151 AD2d 889, 890 [3d Dept 1989]). We further conclude that, in opposition, respondent failed to raise a triable issue of fact with respect to decedent's capacity to create the trust, instead relying heavily on the same impermissible speculation about the effects of decedent's cancer diagnosis on his ability to execute the trust that she offered with respect to the will (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
For reasons previously stated in connection with the will contest, we further conclude that petitioners met their initial burden of establishing that the revocable trust was not the product of undue influence (see generally Bazigos v Krukar, 140 AD3d 811, 813-814 [2d Dept 2016]; [*4]Matter of Seelig, 13 AD3d 776, 777-778 [3d Dept 2004], lv denied 4 NY3d 707 [2005]) and that respondent failed to raise a triable issue of fact in opposition (see generally Zuckerman, 49 NY2d at 562).
We likewise conclude that the Surrogate properly denied respondent's cross motion for partial summary judgment seeking, inter alia, a declaration that petitioners maintained a confidential relationship with decedent such that the burden of proof shifted to them to establish that the will and revocable trust were not the products of undue influence. Generally, "[t]he burden of proving undue influence . . . rests with the party asserting its existence" (Matter of Nurse, 160 AD3d 745, 748 [2d Dept 2018]; see Matter of Panek, 237 AD2d 82, 83-84 [4th Dept 1997]). Where, however, "there was a confidential or fiduciary relationship between the beneficiary and the decedent, [a]n inference of undue influence arises which requires the beneficiary to come forward with an explanation of the circumstances of the transaction" (Blase v Blase, 148 AD3d 1777, 1778 [4th Dept 2017] [internal quotation marks omitted]; see Bazigos, 140 AD3d at 813; Matter of Prievo v Urbaniak, 64 AD3d 1240, 1241 [4th Dept 2009]), i.e., " 'to prove the transaction fair and free from undue influence' " (Prievo, 64 AD3d at 1241). On her cross motion, respondent had the initial burden to establish " 'the requisite threshold showing that a confidential relationship existed' " (id.; see Matter of Graeve, 113 AD3d 983, 984 [3d Dept 2014]).
"[T]o demonstrate the existence of a confidential relationship, there must be evidence of circumstances that demonstrate inequality or a controlling influence" (Matter of Albert, 137 AD3d 1266, 1268 [2d Dept 2016], lv denied 27 NY3d 910 [2016]; see Nurse, 160 AD3d at 748). A confidential relationship is "one that is 'of such a character as to render it certain that [the parties] do not deal on terms of equality' " (Matter of Bonczyk v Williams, 119 AD3d 1124, 1125 [3d Dept 2014]). As relevant here, "the existence of a family relationship does not, per se, create a presumption of undue influence; there must be evidence of other facts or circumstances showing inequality or controlling influence" (Feiden, 151 AD2d at 891; see Bonczyk, 119 AD3d at 1126; Graeve, 113 AD3d at 984). Indeed, a "familial relationship counterbalances any presumptions arising from any claimed confidential relationship or the fact that petitioner was a beneficiary" (Matter of Ruhle, 173 AD3d 1389, 1391 [3d Dept 2019]).
Respondent did not meet her burden of establishing as a matter of law that the surviving spouse had a confidential relationship with decedent. Respondent supplied no evidence showing that the role of the surviving spouse in decedent's estate planning process or other financial decisions was "anything more than a conduit to effectuate [his] desires" (Matter of Prevratil, 121 AD3d 137, 142 [3d Dept 2014] [internal quotation marks omitted]; see Bonczyk, 119 AD3d at 1127). Indeed, any assertion that the surviving spouse exercised a controlling influence over decedent's decisions was undermined by the evidence establishing decedent's sound mind and his active participation in the estate planning process. Further, the surviving spouse's involvement in decedent's medical care did not establish a confidential relationship given that decedent "was not under her exclusive care and control and had fairly regular contact with friends as his illness progressed" (Prevratil, 121 AD3d at 142-143; cf. Oakes v Muka, 69 AD3d 1139, 1139-1141 [3d Dept 2010], appeal dismissed 15 NY3d 867 [2010], reconsideration denied 16 NY3d 733 [2011]). To the extent the surviving spouse's involvement in decedent's medical care suggests the existence of a confidential relationship, any presumptions arising from the existence of such a relationship were ultimately counterbalanced by the familial relationship between them (see Ruhle, 173 AD3d at 1391; Prevratil, 121 AD3d at 143; Graeve, 113 AD3d at 984-985).
Furthermore, the fact that the surviving spouse held a power of attorney for decedent did not establish a confidential relationship between her and decedent. A "power of attorney, standing alone, is insufficient to establish the existence of a confidential relationship or to shift the burden of proof regarding undue influence"—particularly where, as here, the surviving spouse never exercised the power of attorney (Giaquinto, 164 AD3d at 1530; see Dwyer v Valachovic, 137 AD3d 1369, 1371 [3d Dept 2016]). No inference of undue influence applies with respect to petitioner Evan Dreyfuss inasmuch as he was not a beneficiary of the will (see Matter of Coopersmith, 48 AD3d 562, 563 [2d Dept 2008]; cf. Matter of Delorey, 141 AD2d 540, 541-542 [2d Dept 1988]).
We have considered respondent's remaining contention and conclude that it does not [*5]warrant reversal or modification of the order.
Entered: March 18, 2022
Ann Dillon Flynn
Clerk of the Court