■ In the Matter of the Estate of JANE B. BUCHANAN, Deceased. HUGH A. WHEELER, as Executor of JANE B. BUCHANAN, Deceased, Respondent; WILLIAM BUCHANAN et al., Appellants. [665 NYS2d 980] —Spain, J. Appeals (1) from an order of the Surrogate's Court of Broome County (Thomas, S.), entered May 1, 1996, which partially granted petitioner's motion for summary judgment, and (2) from an order of said court, entered July 1, 1996, which denied respondents' motion to set aside a verdict rendered in favor of petitioner.

Jane B. Buchanan (hereinafter decedent) died on February 18, 1995 at the age of 89 leaving a will dated March 23, 1993 (hereinafter the 1993 will) which, after making several specific bequests, devised the residuary estate to her 12 nieces and nephews in equal shares. The 1993 will purported to revoke certain provisions of a 1988 will (hereinafter the 1988 will) which devised, *inter alia*, the entire residuary estate to decedent's sister, and in the event that her sister predeceased her, as the sister did, to respondents (Paul Buchanan and William Buchanan), her nephews, in equal shares. In addition, the 1993 will appointed petitioner as executor of decedent's estate, thereby revoking provisions of the 1988 will naming William Buchanan as executor of the estate. It is undisputed that in July 1993, four months following execution of the 1993 will, decedent suffered a complete loss of cognitive function as a result of senile dementia.

Following decedent's death, petitioner offered the 1993 will for probate. Respondents thereafter filed objections and amended objections to the probate, contending, *inter alia*, that decedent was not competent to make a will on March 23, 1993, that the 1993 will was procured by undue influence practiced

by decedent's niece Mary Bolton and her nephew Cleatis Bolton, and that petitioner named himself as sole executor contrary to decedent's declared intent. Following depositions and an SCPA 1404 hearing, petitioner moved for summary judgment dismissing such objections; respondents opposed the motion. Surrogate's Court granted summary judgment in favor of petitioner on the issue of undue influence, but directed that the issues of decedent's testamentary capacity and her intent to name petitioner as executor be submitted to a jury.

At the ensuing trial, petitioner sought to prove that decedent was of sound mind and memory at the time she made the 1993 will and that the provisions were a product of decedent's own volition. Respondents offered proof that decedent lacked testamentary capacity on March 23, 1993 because the senile dementia was a chronic progressive condition which began several years prior to the 1993 will's execution and, further, that decedent had been extremely dissatisfied with the legal services petitioner had previously provided and would not have named him executor. Following trial, the jury found in favor of petitioner and Surrogate's Court issued a decree admitting the 1993 will to probate. Respondents thereafter moved pursuant to CPLR 4404 for an order setting aside the verdict as against the weight of the evidence and for an order directing a hearing on the issue of juror misconduct. Petitioner opposed and, following a hearing on the motion, Surrogate's Court denied the motion in all respects. Respondents appeal.

We affirm. Initially, we note that the appeal from the interlocutory order which granted summary judgment dismissing the undue influence objection must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree in this action (see, Matter of Aho, 39 NY2d 241, 248). In any event, the record reveals that the Boltons seldom visited decedent, had no control over her daily activities or financial affairs and did not participate in the 1993 will making; further, decedent contacted petitioner to make a new will prior to the Boltons' visit and respondents themselves doubted the validity of the objection. The record is clearly devoid of any evidence that the Boltons had an opportunity to exercise undue influence over decedent or, as importantly, that they actually did so (see, Matter of Antoinette, 238 AD2d 762, 763; Matter of Richtman, 221 AD2d 640, lv denied 87 NY2d 810; Matter of Burke, 82 AD2d 260).

Next, we reject respondents' contention that Surrogate's Court improperly denied their motion to set aside the verdict as against the weight of the evidence. A verdict for the non-

moving party may not be disturbed unless the evidence so preponderated in the movant's favor that it could not have been reached on any fair interpretation of the evidence (*see, Lolik v Big V Supermarkets*, 86 NY2d 744; *Petrivelli v Walz*, 227 AD2d 735). In a will contest proceeding, the proponent of the will has the burden of establishing testamentary capacity with evidence demonstrating that the decedent understood the nature and consequences of executing a will, knew the nature and extent of the property disposed of, and knew the identity and relation of those considered to be the natural objects of his or her bounty (*see, Matter of Kumstar*, 66 NY2d 691, 692; *Matter of Van Patten*, 215 AD2d 947, 948, *lv denied* 87 NY2d 802). Mere proof that the decedent suffered from old age, physical infirmity and chronic, progressive senile dementia when the will was executed is not necessarily inconsistent with testamentary capacity and does not alone preclude a finding thereof (*see, Matter of Hedges*, 100 AD2d 586; *see also, Matter of Fiumara*, 47 NY2d 845, 847; *Matter of Ruso*, 212 AD2d 846; *Matter of Slade*, 106 AD2d 914, 915), as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made (*see, Matter of Long*, 176 AD2d 1059, 1060; *Matter of Hedges, supra*).

Here, petitioner testified that on or about March 23, 1993 he went to decedent's home, decedent invited him inside and, appearing to be in a good mood, advised that she wished to make a new will because her sister had recently passed away; also, decedent verbally expressed concern that William Buchanan, who had been handling the majority of decedent's financial affairs pursuant to a 1991 power of attorney, was failing to keep her advised of financial matters. Petitioner further testified that, unaware of the intervening 1988 will, he retrieved a will from decedent's file executed in 1986 (hereinafter the 1986 will). As petitioner and decedent reviewed each paragraph of the 1986 will, decedent voiced the desired changes and her reasons therefor. As to the clause in the 1986 will appointing petitioner and William Buchanan as coexecutors, decedent stated her desire to eliminate the latter's name because she had "done enough" for him and because she feared that he would sell her stocks.

Later that same day petitioner returned to decedent's home with his secretary and his wife, who witnessed the execution of the will. Petitioner testified that decedent quickly read the 1993 will, alerted petitioner to a drafting error and made the necessary changes. After petitioner read the revised 1993 will aloud, decedent expressed her satisfaction with its terms and

executed it. Although decedent never mentioned the intervening 1988 will in the course of either of petitioner's visits, in petitioner's opinion decedent was rational and of sound mind on March 23, 1993. Petitioner's wife confirmed that decedent read the will, corrected the drafting error therein and expressed her understanding of its contents; she further testified that decedent's comments and statements impressed her as rational and competent. Petitioner's secretary corroborated the testimony of petitioner and his wife. Clearly, this testimony was adequate to support the jury's finding that decedent understood the will and the significance of its execution (*see, Matter of Long, supra*).

Furthermore, petitioner offered the testimony of the physician who treated decedent for osteoporosis from August 1992 until August 1993. During the course of his treatment of decedent he noted no defect in decedent's mental state until July 1993; at that time, the doctor diagnosed decedent with recent onset, progressive dementia with inability to ambulate. Moreover, decedent's opthalmologist testified that decedent recovered well from cataract and glaucoma surgeries performed in February 1992 and January 1993 and that in May 1993 decedent's vision was not significantly impaired. Both witnesses testified that prior to July 1993 decedent appeared oriented in person, place and time. In our view, the testimony of these disinterested witnesses further support the conclusion that prior to July 1993 decedent was capable of reading the 1993 will, possessed reasonable cognitive functioning and was of full testamentary capacity (*see, id.*, at 1060).

Witnesses for respondents included, *inter alia*, a longtime acquaintance of decedent, a psychiatrist who did not examine decedent but rather reviewed laboratory tests and medical records compiled by decedent's various attending physicians, and a neurologist who examined decedent for the first time in August 1993. The psychiatrist testified that in his opinion decedent suffered from a progressive loss of cognitive function associated with macrocytic anemia and an Alzheimer's-type dementia. He further testified that since decedent's stage of dementia was so advanced it was unlikely that she could have had a lucid interval for the entire five-hour period encompassing the will execution. The neurologist opined that decedent's symptoms were strongly suggestive of a chronic progressive dementing process which began long before his examination and had finally reached the point of dysfunction. " 'When there is conflicting evidence or the possibility of drawing inferences from undisputed evidence, the issue of capacity is one for the

jury' " (*Matter of Marsh*, 236 AD2d 404, 405, quoting *Matter of Kumstar*, 66 NY2d 691, 692, *supra*; *see*, Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 3-1.1, at 275). Moreover, the psychiatrist's testimony was based almost exclusively upon decedent's medical records and was thus "the weakest and most unreliable type of evidence" (*Matter of Slade*, 106 AD2d 914, 915, *supra*; *see*, *Matter of Van Patten*, 215 AD2d 947, *supra*). In our view the evidence did not so establish that decedent lacked testamentary capacity on March 23, 1993 that setting aside the verdict would have been warranted.

Next, we reject respondents' contention that Surrogate's Court erred in summarily denying the posttrial motion regarding juror misconduct. "To succeed in setting aside a verdict of the jury on the ground that a juror had not truthfully responded to questions put to him [or her], the moving party must show concealment of facts, bias or prejudice [citation omitted]" (*Holland v Blake*, 38 AD2d 344, 346, *affd* 31 NY2d 734; *see generally*, *Galus v Milner*, 81 AD2d 933, *affd* 54 NY2d 1019). Moreover, a prospective juror is not only duty bound to truthfully answer all questions posed during voir dire, but is obligated to volunteer information which he or she has reason to believe would render him unacceptable to the litigants (*see*, *Holland v Blake*, *supra*, at 346). In our view, Surrogate's Court properly denied the motion because the allegations of juror misconduct were based solely upon hearsay (*see*, *Putchlawski v Diaz*, 192 AD2d 444, *lv denied* 82 NY2d 654) and because the juror injected only her personal experiences, rather than outside material, into deliberations (*see*, *Nicolla v Fasulo*, 161 AD2d 966, 968). Moreover, inasmuch as respondents failed to allege the manner in which the juror's conduct affected the deliberations or otherwise prejudiced their cases, the court was not required to conduct a hearing on the matter (*see*, *id.*, at 968).

We also agree with the determination by Surrogate's Court that the Dead Man's Statute barred respondents' testimony. The rule of evidence articulated by the Dead Man's Statute prohibits any person interested in the outcome of a proceeding from testifying regarding any personal transaction with the deceased (*see*, CPLR 4519; *Matter of Wood*, 52 NY2d 139, 144; *Matter of Miller*, 97 AD2d 581). However, the statute's protection is waived and the door opened to such testimony where the estate's representative elicits prohibited testimony from an interested party (*see*, *Matter of Miller*, *supra*; *Matter of Smith*, 84 AD2d 664). Here, it is undisputed that respondents were

interested parties precluded under the Dead Man's Statute from testifying at trial relative to any transaction with decedent. Decedent's former treating physician who testified on behalf of petitioner was not an adversely interested person as defined by CPLR 4519. Moreover, it was respondents' counsel, rather than counsel for the estate, who elicited the statement claimed to have opened the door to respondents' otherwise prohibited testimony. Accordingly, we conclude that Surrogate's Court did not err in concluding that the physician's testimony did not waive the Dead Man's Statute.

We have considered respondents' remaining contentions and petitioner's request for sanctions, and find them to be without merit.

Mikoll, J. P., White, Casey and Yesawich Jr., JJ., concur. Ordered that the orders are affirmed, with costs.