[Cite as *State v. Strowder*, 2018-Ohio-1292.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
## No. 105569

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DASHAWN STROWDER

DEFENDANT-APPELLANT

---

## JUDGMENT:
CONVICTIONS AFFIRMED,
SENTENCE REVERSED
AND REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604551-A

**BEFORE:** Blackmon, P.J., Laster Mays, J., and Jones, J.
**RELEASED AND JOURNALIZED:** April 5, 2018

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Carl Mazzone
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶1}   Appellant Dashawn Strowder ("Strowder") appeals from his convictions for rape, kidnapping, robbery, and felonious assault, following a mandatory transfer from juvenile court.   He assigns the following errors for our review:

I.  The mandatory transfer of [Strowder] by the juvenile court to adult court for purposes of criminal prosecution constitutes a denial of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 16, of the Constitution of the State of Ohio.

II.   The mandatory transfer of [Strowder] by the juvenile court to adult court for purposes of criminal prosecution constitutes a denial of equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 2, of the Constitution of the State of Ohio.

III.   The 50-year term of imprisonment for rape and related offenses allegedly committed by [Strowder] while he was a juvenile constitutes cruel and unusual punishment and a denial of due process of law in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 9 and 16, of the Constitution of the State of Ohio.

IV.   The special instruction given by the court for attorney jurors singles out attorney jurors and encroaches upon their ability to fully participate in jury deliberations, thereby depriving [Strowder] of his right to a trial by jury, guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, Section 10, of the Constitution of the State of Ohio.

V.   The evidence is insufficient to support a conviction for felonious assault.

VI. [Strowder's] conviction for felonious assault and his other convictions are against the manifest weight of the evidence.

**{¶2}** For the sake of clarity, we shall address the third assigned error last. Having reviewed the record and pertinent law, we affirm the convictions, but reverse and remand for resentencing. The apposite facts follow.

**{¶3}** This case originated in juvenile court when then-17-year-old Strowder was charged in connection with offenses alleged to have occurred on or about April 21, 2013. Following a mandatory bindover, Strowder and codefendant Isaiah Campbell ("Campbell") were indicted in a nine-count indictment. As is relevant herein, Strowder was charged with three counts of rape with sexually violent predator specifications, two counts of kidnapping, with one count alleging both a sexual motivation specification and a sexually violent motivation specification, aggravated robbery, felonious assault with a sexual motivation specification, grand theft (motor vehicle), and receiving stolen property, in violation of R.C. 2913.51(A). All counts also contained one-year and three-year firearm specifications. Strowder pled not guilty and the matter against him proceeded to a jury trial on January 24, 2017.

## Jury Trial

**{¶4}** During the jury trial, the state presented the testimony of ten witnesses including S.W., the alleged victim of the offenses.[1] S.W., who was 44 years old at the time of trial, testified that on April 21, 2013, she went out with her sister and her sister's boyfriend. S.W. consumed a vodka drink before leaving home and one or two glasses of

---

[1] In accordance with this court's policy regarding nondisclosure of the identity of victims in cases involving sexual assaults, she will be referred to using initials.

wine while out. At approximately 2:00 a.m., she proceeded to her home in East Cleveland. While en route, she stopped at a stop light on Hayden Avenue at the intersection of Claiborne Avenue, and looked downward to light a cigarette. When she looked up again, she spotted two individuals with black hoods drawn tightly over their heads running toward her car. Both were armed. As she struggled to lock the car doors, one individual entered the car through the passenger door, and the other entered through the rear driver's side door. The individual in the back seat held a gun to the back of S.W.'s head, ordered her to drive, and instructed where to turn, while the individual seated in the front passenger seat also pointed a gun at her. They eventually ended up on East 134th Street near some abandoned houses.

{¶5} S.W. testified that the individual seated in the front seat grabbed her head and ordered her to perform oral sex on him. The men then ordered her to the back seat to complete the sex act on the first man, while the second man vaginally raped her. After that, the men ordered her to perform oral sex on the second man, while the first man vaginally raped her. The men rummaged through S.W.'s purse, ordered her from the car, and fled in her vehicle. S.W. ran to find help, then called police.

{¶6} S.W. admitted that she was shown a photo array and identified an individual who was later excluded from involvement in this matter. She was also shown a second photo array and indicated that she "truly believe[d]" that another person was the assailant, and that a fourth person "could be" the assailant, but both were also excluded from involvement. S.W. explained that she could only see part of the attackers' faces.

{¶7} Cuyahoga County Deputy Sheriff Shannon Cushman ("Deputy Cushman") responded to the scene at approximately 3:00 a.m. He observed that S.W. was hyperventilating and hysterical. Deputy Cushman stated that she seemed slightly intoxicated. S.W. also reportedly told Deputy Cushman that the second individual attempted to vaginally rape her but was unable to do so.

{¶8} University Hospitals Sexual Assault Nurse Examiner ("SANE") Denise Robinson ("Nurse Robinson") testified that she completed a sexual assault examination and rape kit in this matter. She collected S.W.'s clothing, swabbed her for evidence, and examined her for injuries and signs of trauma.

{¶9} C.M., S.W.'s stepbrother, testified that a few days after the incident, he spotted S.W.'s car traveling in East Cleveland. He followed it, but the occupants abandoned the car. One of the occupants, who had a cast on his arm, fired a shot at C.M. as he fled. However, no DNA evidence related to the assault on S.W. was found inside the car.

{¶10} Ohio Bureau of Criminal Investigation ("OBCI") analyst Brenda Butler ("Butler") testified that she obtained approximately five fingerprints, three partial palm prints, and three shell casings from two different guns in S.W.'s car. The prints were not linked to Strowder, but were instead from two other individuals.

{¶11} OBCI forensic scientists Deidre Hartz ("Hartz") and Emily Feldkris ("Feldkris") analyzed the DNA samples obtained during the SANE examination. The oral swabs contained semen that was a mixture from two individuals, Strowder and Campbell.

The probability of finding this same DNA profile in the general population was one in a trillion as to Campbell and one in 780,000,000 as to Strowder. One of the swabs from S.W.'s underwear also contained a mixture from both Strowder and Campbell. The probability of finding this same DNA profile in the general population was one in 92,940,000 as to Campbell and one in a trillion as to Strowder.

{¶12} Cuyahoga County Deputy Sheriff Yashila Crowell ("Deputy Crowell") testified that based upon the fingerprint evidence obtained in this matter, she prepared a photo array for S.W. She identified an assailant, but his DNA profile was not contained in the bodily fluid swabs from the rape kit, and he was excluded from involvement. S.W. was shown another array, and she incorrectly identified two other individuals who do not have a connection to this case, and failed to identify Strowder's photograph.

{¶13} Deputy Crowell and East Cleveland Police Detective Ernest Stanford ("Det. Stanford"), interviewed Strowder and he acknowledged that in April 2013, he had a cast on his arm, and that he had a gun. However, he denied having sex with S.W. and denied involvement in the matter.

{¶14} The jury acquitted Strowder of one of the rape charges but convicted him of all remaining charges. After obtaining additional testimony and evidence pertaining to Strowder's two public indecency offenses while incarcerated, the trial court found Strowder guilty of the sexually violent predator specifications. The court merged the aggravated robbery, grand theft, and receiving stolen property convictions, and also merged the felonious assault conviction into the rape, kidnapping, and aggravated robbery

convictions. The court imposed consecutive terms, sentencing Strowder to 50 years to life, and also ordered that this term be served consecutively to Strowder's nine-year sentence in another matter from Stark County that occurred while he was in the custody of the Ohio Department of Youth Services.

## Mandatory Transfer

{¶15} In the first and second assigned errors, Strowder argues that the mandatory transfer by the juvenile court to the general division of the court of common pleas violated his right to due process of law. He asserts that the transfer violated concepts of fundamental fairness by: depriving him of a hearing before a juvenile court judge; denying him the opportunity to show that he can change as he matures; and preventing mitigation of culpability and penalty based upon age. Additionally, he argues that the mandatory transfer statutes violate his right to equal protection of the law. He asserts that the statutes do not withstand strict scrutiny that must be applied for juvenile offenders. Alternatively, he asserts that the statutes lack a rational basis because they subject similarly situated children to different treatments based solely upon their ages, and do not recognize differences between older and younger children.

{¶16} Recently, in *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, the Ohio Supreme Court held that the mandatory bindover of certain juvenile offenders under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) complies with due process and equal protection as guaranteed by the Ohio and United States Constitutions. In so holding, the court rejected each of the challenges Strowder asserts herein. *See also State*

*v. Martin*, 8th Dist. Cuyahoga No. 102783, 2016-Ohio-922, ¶ 20. Accordingly, the first and second assigned errors are without merit.

## Instruction for Attorney Juror

**{¶17}** In the fourth assigned error, Strowder argues that the portion of the trial court's charge that was directed to an attorney juror erroneously encroached upon the attorney juror's ability to fully participate in the deliberation of this matter.

**{¶18}** The court's charge on this issue is as follows:

> You are also instructed that any attorney on the jury should be accorded no greater role or stature than any other juror, and their opinions should be accorded no greater weight merely because of their status as an attorney. This is particularly true as it pertains to the instructions of law and legal definitions which I have provided to you.
>
> I have supplied you with all of the law you need to decide this case. Should any question arise as to the definition of law or application of these instructions, you are instructed not to request clarification from the attorney on the panel. Rather, you must communicate any such question to the Court in writing.
>
> Any attorney on the panel should be careful to not redefine or interpret these instructions or in any other way inject any opinion into the deliberations that is not based on evidence presented but is instead rooted in your personal interpretation of the law.
>
> Most importantly, attorneys shall refrain from privately or publicly speculating on the effect of any legal rulings by the Court, or matters of strategy or tactics employed by either side.

Tr. 733-734.

**{¶19}** Other courts considering the role of attorney jurors have ensured that these jurors do not rely upon information that is not directly related to the litigation at issue, and do not present extraneous information. *Leavitt v. Magid*, 257 Neb. 440, 449, 598 N.W.2d

722 (1999); *23 Jones St. Assoc. v. Beretta,* 722 N.Y.S.2d 229, 280 A.D.2d 372 (1st Dept.2001); *Matter of Buchanan*, 665 N.Y.S.2d 980, 245 A.D.2d 642 (3d Dept.1997).

**{¶20}** Likewise, in this matter, the court's charge properly instructed the jury that it should not consider or accept any advice about the law from any source other than the court, and must not rely upon information that is not directly related to the litigation at issue. The charge was also reasonably fashioned to ensure that the panel was not improperly influenced by this juror. *Accord Swartz v. St. Mary's Hosp. of Amsterdam,* 956 N.Y.S.2d 243, 101 A.D.3d 1273 (3d Dept.2012).

**{¶21}** Therefore, this assigned error is without merit.

### Sufficiency of Evidence of Felonious Assault

**{¶22}** In the fifth assigned error, Strowder argues that the state failed to present sufficient evidence to support his conviction for felonious assault.

**{¶23}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id*. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365,

2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶24} As is relevant herein, R.C. 2903.11(A)(2) defines felonious assault as follows: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another * * * by means of a deadly weapon or dangerous ordnance[.]"

{¶25} In *State v. Brooks*, 44 Ohio St.3d l85, 542 N.E.2d 636 (1989), the Ohio Supreme Court held that "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at the syllabus. In that case, the defendant argued with the victim, then pointed a handgun at her face and threatened to kill her. *Id*. at 187. The Ohio Supreme Court upheld the felonious assault conviction, stating:

> Under these circumstances, we cannot say that a reasonable jury properly instructed could not have concluded that the defendant's actions were "strongly corroborative" of his intent to cause physical harm to Barker by means of his deadly weapon.

*Id*. at 192.

{¶26} The court dealt with this issue again in *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991). In that case, the defendant aimed a rifle at a police officer's head, and shouted, "If you don't have a warrant get the [f* * *] out of my house." The court held that under those circumstances, a jury could have concluded that defendant's actions were strongly corroborative of his intent to cause physical harm to the officers by means of his deadly weapon. *Id*. at 242.

**{¶27}** In *State v. Shepherd*, 8th Dist. Cuyahoga No. 102974, 2016-Ohio-1119, this court affirmed a felonious assault conviction where the defendant and his brother robbed a store owner and defendant's brother pointed his gun at the owner and said to him, "you know what this is." *Id*. at ¶ 12. *Accord State v. Smiley*, 8th Dist. Cuyahoga No. 97047, 2012-Ohio-1742, ¶ 29 (felonious assault conviction affirmed where the defendant pointed a gun at victim's chest, and said, "don't move."); *State v. McCauley*, 8th Dist. Cuyahoga No. 73892, 1999 Ohio App. LEXIS 1848 (Apr. 22, 1999), *appeal not allowed*, 86 Ohio St.3d 1467, 715 N.E.2d 569 (1999) (felonious assault conviction affirmed where the defendant pointed his gun at the victims and instructed them "not to run or try to move and to be quiet."); *State v. Jackson*, 8th Dist. Cuyahoga No. 93815, 2010-Ohio-4486 (felonious assault conviction affirmed where the defendant pointed a gun at the victim's chest and stated, "What's up with this? This is what I mean.").

**{¶28}** In this matter, S.W. testified that both assailants ran at her car with guns drawn and got into her car. One aimed his gun at the back of her head and told her where to turn, while the other one pointed his weapon at her. They then forced her at gunpoint to the back of the vehicle and repeatedly raped her at gunpoint. They rifled through her purse and threw her out of her car. She testified that all of the crimes were completed because the assailants had weapons and she was afraid. Under these circumstances, a reasonable jury could have concluded that the defendant's actions were "strongly corroborative" of his intent to cause physical harm to the victim by means of his deadly weapon. Strowder's uninterrupted pointing a gun at the victim, along with repeated orders

directed at accomplishing offenses, could be perceived by a reasonable person as ample manifestation of Strowder's clear intention to cause harm by means of a deadly weapon in the event of any noncompliance with his demands. Sufficient evidence supports the conviction for felonious assault.

{¶29} The fifth assigned error is without merit.

### Manifest Weight of the Evidence

{¶30} In the sixth assigned error, Strowder argues his convictions are against the manifest weight of the evidence.

{¶31} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

**{¶32}** An appellate court may not merely substitute its view for that of the factfinder, but must find that "'in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

**{¶33}** In this matter, S.W. testified that armed assailants overtook her as she was stopped at a stop light, took her to a secluded location, then orally and vaginally raped her at gunpoint. They rifled through her purse and fled in her car. Evidence swabs from her mouth and underwear contained Strowder's semen. Although Strowder denied having sex with S.W., DNA analysis identified Strowder and Campbell as the assailants, with the expected frequency of occurrence of that particular profile being less than one in one trillion unrelated individuals from the underwear and less than one in 780,000,000 from the oral swab.

**{¶34}** Nonetheless, Strowder argues that the victim's testimony was not credible because it contained numerous inconsistencies and she also misidentified other individuals as her assailants.

**{¶35}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use

these observations in weighing the credibility of the proffered testimony." *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

{¶36} After independently reviewing the entire record and weighing the aforementioned evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we overrule this assigned error.

## Sentence

{¶37} In the third assigned error, Strowder also argues that his sentence violates the constitutional prohibition against cruel and unusual punishment because it stems from his activities, as a juvenile, on a single night.

{¶38} In *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the United States Supreme Court held that sentences of life imprisonment without parole for juvenile nonhomicide offenders constitutes cruel and unusual punishment, in light of the lack of maturity of juvenile offenders, the limited moral culpability of juvenile offenders who do not kill, the length of the prison terms, and the inadequacy of penological theory justifying these sentences. *Id.* at 74.

{¶39} In *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, the Ohio Supreme Court held that *Graham* also prohibits the "functional equivalent" of life without parole for juvenile nonhomicide offenders and therefore prohibits aggregate

term-of-years sentences for multiple nonhomicide convictions that exceed the defendant's life expectancy. Additionally, the court held that a "court cannot impose a sentence that is barred because of the [age] of the offender on the ground that the offender committed multiple crimes." *Moore* at ¶ 73. That is, the "number of offenses committed cannot overshadow the fact that it is a child who has committed them." *Id.*

{¶40} Significantly, the *Moore* court acknowledged that "the state retains the ability, upon meaningful evaluation of an offender, to impose lifetime incarceration upon the most serious offenders" and that *"Graham* does not guarantee an eventual release." *Id.* at ¶ 44-45. However, *Graham* "enunciated 'a categorical rule [that] gives all juvenile nonhomicide offenders a [meaningful opportunity] to demonstrate maturity and reform.'" *Id.* at ¶ 70, quoting *Graham* at 79.

{¶41} The *Moore* court made clear that courts should not undertake fine line-drawing to determine how much time a nonhomicide juvenile offender may serve in relation to his or her life expectancy. *Id.* at ¶ 82. Rather, the focus is upon providing a meaningful opportunity for possible release before the end of the imposed sentence by demonstrating maturity and rehabilitation. *Id.* at ¶ 60-63. The *Moore* court explained:

> It is consistent with *Graham* to conclude that a term-of-years prison sentence extending beyond a juvenile defendant's life expectancy does not provide a realistic opportunity to obtain release before the end of the term. *Graham* decried the fact that the defendant in that case would have no opportunity to obtain release "even if he spends the next half century attempting to atone for his crimes and learn from his mistakes." *Id.* at 79. Certainly, the court envisioned that any nonhomicide juvenile offender would gain an opportunity to obtain release sooner than after three quarters of a century in prison. *Graham* is less concerned about how many years an offender serves

in the long term than it is about the offender having an opportunity to seek release while it is still meaningful.

*Id*. at ¶ 63.

**{¶42}** The *Moore* court recognized that states have enacted new legislation to allow for parole eligibility for juveniles after fifteen or twenty-five years of incarceration. *Moore* at ¶ 82. Similarly, H. B. No. 394 was introduced in Ohio to authorize parole eligibility for nonhomicide juvenile offenders after 30 years. It has not been enacted. However, it demonstrates some concern that nonhomicide juvenile offenders be in a position to seek a meaningful opportunity for parole.

**{¶43}** In *State v. Terrell*, 8th Dist. Cuyahoga No. 103428, 2016-Ohio-4563, this court applied the considerations for juveniles outlined in *Graham*, but we found the defendant's sentence permissible because:

> Terrell is entitled to parole hearings after 21 years to determine if he has been rehabilitated to such an extent that he may re-enter society.

*Id*. at ¶ 17. *See also State v. Alexander*, 8th Dist. Cuyahoga No. 104281, 2017-Ohio-9011 (denying reopening of appeal from sentence for murder and other offenses because "mandatory parole" was part of Alexander's sentence).

**{¶44}** In this matter, the parties have not informed us of the point at which Strowder will become eligible for parole. However, it is clear, due to the numerous mandatory and consecutive aspects of the sentence, and the absence of any reference to parole, that Strowder will not be able to seek release for decades. R.C. 2967.13. This raises concerns that are inconsistent with *Moore* and *Graham*. Accordingly, we are

compelled to reverse and remand for resentencing to allow the trial court to establish a record that demonstrates when Strowder will be eligible for parole. The standard is whether the nonhomicide juvenile offender has a meaningful opportunity for parole.

**{¶45}** This assigned error is well taken.

**{¶46}** The convictions are affirmed, but the sentence is reversed and the matter is remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
LARRY A. JONES, SR., J., CONCUR