Matter of State of New York v Donald G. (2020 NY Slip Op 04716)





Matter of State of New York v Donald G.


2020 NY Slip Op 04716


Decided on August 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, CURRAN, TROUTMAN, AND WINSLOW, JJ.


733 CA 18-01355

[*1]IN THE MATTER OF STATE OF NEW YORK, PETITIONER-RESPONDENT,
v
DONALD G., RESPONDENT-APPELLANT. 






KAMAN BERLOVE MARAFIOTI JACOBSTEIN & GOLDMAN, LLP, ROCHESTER (GARY MULDOON OF COUNSEL), FOR RESPONDENT-APPELLANT. 
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (FREDERICK A. BRODIE OF COUNSEL), FOR PETITIONER-RESPONDENT. 


 Appeal from an order of the Supreme Court, Cayuga County (Mark H. Fandrich, A.J.), entered June 29, 2018 in a proceeding pursuant to Mental Hygiene Law article 10. The order, inter alia, granted the motion of petitioner to set aside a jury verdict and ordered a new trial. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs, the motion is denied and the jury verdict is reinstated.
Memorandum: Petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10, alleging that respondent is a sex offender requiring civil management. After a jury trial, the jury found that respondent is not a detained sex offender suffering from a mental abnormality (see §§ 10.03 [i]; 10.07 [d]). Thereafter, Supreme Court granted petitioner's motion to set aside the verdict pursuant to CPLR 4404 (a) on the ground of juror misconduct. That was error. We therefore reverse the order, deny the motion, and reinstate the jury verdict (see generally Ortega v Healthcare Servs. Group, Inc., 166 AD3d 1506, 1507 [4th Dept 2018]).
In 1991, respondent was sentenced to an indeterminate term of incarceration of 12½ to 25 years upon a conviction of, inter alia, rape in the first degree. Respondent has served his sentence, but remains incarcerated because his release was stayed (see Mental Hygiene Law § 10.06 [h]). In a trial on the petition, a key piece of evidence was that respondent had not been cited for sexual misbehavior during his nearly 30 years in prison. Three psychology experts testified, two on behalf of petitioner and one on behalf of respondent. Although they all agreed that prison is a controlled environment, their collective testimony established the manner in which incarcerated men may act out sexually, either with each other, such as respondent had while incarcerated as a teenager, or against female staff. For example, there was expert testimony that an inmate may masturbate in front of, leer at, linger around, or harass female staff. There was also expert testimony that some inmates have documented issues dealing with women in authority, child pornography has been found in prison and, though rare, there are instances of vaginal rape in prison. During summations, in reference to respondent's argument that his lack of sexual misbehavior while incarcerated supported the conclusion that he did not have difficulty controlling his sexual behavior, petitioner urged the jurors to use "common sense," and said: "This is somewhat of a prison community, so, there might be some common sense that you have as far as how a prison is run. There is not a lot of opportunities for a guy like this to find either a young girl or a single mom or some other female to rape in prison."
The jury returned a special verdict, finding that respondent "has a congenital or acquired condition that predisposes him to commit sex offenses," but does not suffer from a "[m]ental [a]bnormality" as defined in Mental Hygiene Law § 10.03 (i) inasmuch as his condition does not "result[] in his having serious difficulty in controlling such conduct." The court ordered respondent's immediate release, but stayed the order to allow petitioner time to determine if there [*2]were grounds for appeal.
Petitioner then moved to set aside the verdict pursuant to CPLR 4404 (a). Petitioner alleged, inter alia, that the jury foreperson had informed the jurors that his father, a correction officer, said that " if inmates wanted to do something in prison they could do it.' " The court convened a hearing on the issue of juror misconduct. After taking testimony from all 12 jurors, the court found that the foreperson had committed juror misconduct. Although the issue of sexual misbehavior in prison was the subject of testimony of "some length" at trial, the "outside influence" of the statements attributed to the foreperson's father affected at least the foreperson, "if not the other jurors," thereby creating "a substantial risk of prejudice to the rights of the state." Based on that finding, the court granted the motion and set aside the verdict.
We agree with respondent that the court abused its discretion in setting aside the verdict. "A new trial may be warranted in the interests of justice' if there is evidence that substantial justice has not been done as a result of juror misconduct" (LaChapelle v McLoughlin, 68 AD3d 824, 825 [2d Dept 2009]; see CPLR 4404 [a]). Such misconduct may warrant a new trial if a juror concealed his or her bias by failing to answer questions truthfully during voir dire (see Luster v Schwarz, 35 AD2d 872, 874 [3d Dept 1970]; Knickerbocker v Erie R.R. Co., 247 App Div 495, 496 [4th Dept 1936]), if a juror injected "significant extra-record facts" into deliberations, thereby becoming an "unsworn witness to nonrecord evidence" (Edbauer v Board of Educ. of N. Tonawanda City School Dist. [appeal No. 3], 286 AD2d 999, 1001 [4th Dept 2001] [internal quotation marks omitted]), or if a juror undertook the role of an expert by providing " personal specialized assessments not within the common ken of juror experience and knowledge . . . concerning a material issue in the case' " (Campopiano v Volcko [appeal No. 2], 61 AD3d 1343, 1344 [4th Dept 2009], quoting People v Maragh, 94 NY2d 569, 574 [2000]). That said, there is no "ironclad rule" concerning juror misconduct (Alford v Sventek, 53 NY2d 743, 745 [1981]), and "not every irregularity in the conduct of jurors requires a new trial" (Khaydarov v AK1 Group, Inc., 173 AD3d 721, 722-723 [2d Dept 2019]; see Russo v Mignola, 142 AD3d 1064, 1066 [2d Dept 2016]). The court must examine the specific facts of each case " to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered' " (Alford, 53 NY2d at 745, quoting People v Brown, 48 NY2d 388, 394 [1979]). A new trial is required only if the misconduct "prejudiced a substantial right of a party" (Khaydarov, 173 AD3d at 723; see generally Alford, 53 NY2d at 745).
Initially, we note that the court did not rule on that part of the motion seeking to set aside the verdict on the ground that the foreperson engaged in misconduct by offering his own expert opinion of the "scientific data" during jury deliberations. Petitioner does not pursue that ground in its brief, and conceded at oral argument that it is no longer pursuing it on appeal. Therefore, we deem that ground to have been abandoned (see generally Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).
Upon our review of the facts of this case, we conclude that petitioner was not prejudiced by the foreperson's failure to disclose during voir dire that his father previously worked as a correction officer (see generally Alford, 53 NY2d at 745). We note that several of the jurors in this case either worked in prison or had close relations who worked as correction officers or in law enforcement. Neither party seems to have considered that to have been a disqualifying attribute because those jurors were selected to serve on the jury. Indeed, because the trial was held in the shadow of Auburn Correctional Facility, it would have been difficult for the parties to select 12 qualified jurors with no connection to the prison. Petitioner's attorney was well aware of that fact and seized upon it during summation, urging the jurors to draw upon their knowledge of the internal workings of prisons in order to decide the case. Petitioner had every reason to believe that a jury packed with prison employees and their relations would likely return a verdict unfavorable to the convicted offender. Petitioner cries foul only because its strategy backfired.
Furthermore, the remarks attributed to the foreperson's father—i.e., "if inmates wanted to do something in prison they could do it"—are unlikely to have caused prejudice to petitioner. That notion was already held by several members of the jury. A juror who worked in prison himself testified at the hearing: "I don't think it is any secret that things go on in prison that ain't supposed to." Another juror, whose brother worked in prison, testified: "I know that" "things can happen in prison." Yet another juror, who had no apparent connection to the prison system, testified: "I felt that it is kind of a known fact what goes on in prison." The jurors' testimony, [*3]including the statement attributed to the foreperson's father, merely expressed the vague notion that inmates engage in unsavory activities in prison despite the restrictiveness of the environment. That hardly controversial notion is one commonly held amongst the general public. In contrast to those vague notions expressed by the jurors at the hearing, the expert psychologists gave detailed testimony at trial about the specific kinds of sexual misbehavior that occur in prison, and all of that trial testimony was properly before the jury. The foreperson's allegedly prejudicial remarks were not prejudicial, but superfluous or redundant.
Our dissenting colleagues suggest that the foreperson intentionally concealed his connection to the prison system in order to infiltrate the jury. In doing so, they assert that the foreperson failed at the hearing to explain his failure to disclose his father's occupation. We respectfully submit that our colleagues' assertion is belied by the record. Specifically, the foreperson provided the following testimony, which the court did not discredit: "I didn't [disclose that information] because it wouldn't affect my ability to be fair and impartial and that's what [the court] wanted us to do." In our view, that testimony demonstrates that the foreperson was acting under a reasonable misunderstanding of the questions during voir dire. The dissent makes much of the foreperson's level of education, which includes a bachelor's degree in biology and a master's in "Teaching," but it is notable that the foreperson has no legal education and therefore is not schooled in answering the court's questions with the degree of precision that is expected of members of the bar. Thus, contrary to the dissent, we cannot conclude that deception or intentional concealment is evident on the face of this record.
Insofar as petitioner asserts that a new trial is warranted because the foreperson inserted outside facts into the deliberations, those being the expert opinions of his father, we conclude that a new trial is unwarranted for the reasons discussed above.
All concur except Curran and Winslow, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent and vote to affirm the order because, in our view, Supreme Court did not abuse its discretion in granting petitioner's motion for a new trial in the interest of justice (see CPLR 4404 [a]; see generally Matter of Small Smiles Litig., 125 AD3d 1395, 1395 [4th Dept 2015]). "The authority to grant a new trial is discretionary in nature and is vested in the trial court predicated on the assumption that the [j]udge who presides at trial is in the best position to evaluate errors therein . . . . Notably, [the court's] decision in [that] regard will not be disturbed absent an abuse of discretion" (Straub v Yalamanchili, 58 AD3d 1050, 1051 [3d Dept 2009] [internal quotation marks omitted]).
We agree with the majority that, under CPLR 4404 (a), "[a] new trial may be warranted in the interest[] of justice' if there is evidence that substantial justice has not been done as a result of juror misconduct" (LaChapelle v McLoughlin, 68 AD3d 824, 825 [2d Dept 2009] [emphasis added]). Specifically, a verdict may be set aside for juror misconduct "on the ground that a juror had not truthfully responded to questions put to him [or her]" where "the moving party . . . show[s] concealment of facts, bias or prejudice" (Holland v Blake, 38 AD2d 344, 346 [3d Dept 1972], affd 31 NY2d 734 [1972]; see Remillard v Louis Williams, Inc., 59 AD3d 764, 766 [3d Dept 2009]; Matter of Buchanan, 245 AD2d 642, 646 [3d Dept 1997], lv dismissed 91 NY2d 957 [1998]).
"Litigants are entitled to a full and fair disclosure of all the facts. It is the duty of a prospective juror to answer truthfully questions of him [or her] as to his [or her] qualifications and he [or she] should not keep silent if, in good conscience, he [or she] ought to reveal facts which he [or she] has reason to believe would render him [or her] unacceptable" (Holland, 38 AD2d at 345-346). "Moreover, a prospective juror is not only duty bound to truthfully answer all questions posed during voir dire, but is obligated to volunteer information which he or she has reason to believe would render him [or her] unacceptable to the litigants" (Buchanan, 245 AD2d at 646).
Here, we conclude that the court did not abuse its discretion in granting the motion because petitioner established that the jury foreperson concealed facts during jury selection, which he subsequently used to exert influence over deliberations. The foreperson's concealment of relevant facts readily allowed the court to conclude that substantial justice was not done, warranting a new trial (see LaChapelle, 68 AD3d at 825; Holland, 38 AD2d at 346). In our view, the foreperson prejudiced the jury's deliberations by introducing outside material related to [*4]the concealed facts (cf. Buchanan, 245 AD2d at 646).
The foreperson, who was well-educated, executed a juror questionnaire affirming "that the statements made on this questionnaire are true and I understand that any false statements made on this questionnaire are punishable under Article 210 of the Penal Law." The questionnaire directly asked the prospective jurors whether they "or someone close to [them] (relative or close friend)" had "ever been employed by [a] . . . [l]aw [e]nforcement o[r] [c]riminal [j]ustice [a]gency." Despite that plain question, the foreperson did not disclose that his father worked as a correction officer. Contrary to the majority's view, we do not agree that a legal education was necessary for the foreperson to comprehend the relevant question or the bolded language contained in the questionnaire's affirmation.
The foreperson also failed to disclose the information about his father during voir dire. During that part of the proceeding, the court asked the initial panel of prospective jurors, of which the foreperson was a member, whether "any of [them] have relatives engaged in the field of law enforcement." Although one prospective juror, who sat next to the foreperson, disclosed that her brother was a police officer, the foreperson remained silent. Later on, petitioner's counsel asked the prospective jurors whether there was anything else they thought the attorneys would like to know. Another prospective juror stated that he had volunteered at the local correctional facility on religious retreats, but the foreperson again remained silent. In contrast, when prospective jurors were asked whether they had any thoughts about psychology as a science, the foreperson volunteered that he had taken courses in patient psychology, had spent a year in medical school, and worked as a science teacher. Shortly thereafter, the foreperson was sworn in as a trial juror, and directed to return to court in two days. Despite having additional time to come forward with the information about his father's occupation before trial commenced, the foreperson never made such disclosure.
At the posttrial hearing, the foreperson admitted that, in the juror questionnaire, he did not disclose his father's employment. Rather than explaining his failure to disclose that information on a form signed under penalty of law, the foreperson testified that he did not understand why he would have to disclose his father's employment. In our view, that bold statement, coupled with the foreperson's silence throughout voir dire, permitted the court to reasonably conclude that the foreperson deliberately concealed the requested information. Furthermore, when asked whether his father's employment "came up" during jury selection, the foreperson equivocated between "I don't think it did" and "I don't remember." In our view, the foreperson's explanatory assertion, relied upon by the majority, that he did not disclose the relevant information "because it wouldn't affect [his] ability to be fair and impartial and that's what [the court] wanted [him] to do" merely demonstrated indifference to his obligation to truthfully answer the straightforward questions put to him by the court. The foreperson also never indicated that he made a mistake by not disclosing that information, or that he had forgotten his father's occupation (cf. Holland, 38 AD2d at 346).
The foreperson's equivocal responses on the subject of disclosure at the hearing—as detailed above—are, in our view, not the statements of a juror who honored the "duty . . . to truthfully answer all questions posed during voir dire," and "to volunteer information which he or she has reason to believe would render him [or her] unacceptable to the litigants" (Buchanan, 245 AD2d at 646). The foreperson was plainly competent enough to read and understand the questionnaire, and was attentive throughout voir dire. To that end, we note that during voir dire the foreperson was compelled to disclose his educational background in response to a direct question on that subject. Moreover, the actions of other prospective jurors in response to relevant questions should have indicated the need for the foreperson to disclose the fact of his father's employment. Although "[a]n incorrect answer given under a mistaken impression" will not warrant a new trial (Holland, 38 AD2d at 346), here, we conclude that the foreperson's silence under these specific circumstances weighs heavily in support of concluding that the court properly determined that there had been juror misconduct warranting a new trial.
Furthermore, the court was entitled to conclude that the foreperson's misconduct prevented substantial justice from being done, and therefore properly granted the motion for a new trial, because the misconduct infected the jury's deliberations. During trial, the court instructed the jury to consider only the facts and evidence that they heard and observed in the courtroom. It repeated this instruction in its charge at the end of the trial. Despite those clear [*5]instructions, the record established that the foreperson told the other members of the jury about his father's occupation—the very fact he did not think warranted any mention at jury selection. Additional evidence at the hearing from other members of the jury permitted the court to conclude that the foreperson told the other jurors that, according to his father, inmates could do pretty much whatever they wanted to do in prison, which included engaging in sexual acts. That outside material, which the foreperson brought into the deliberation room from an unknown and unqualified witness, directly sought to resolve the question of whether respondent could control his sexual behavior—an essential element in determining whether respondent suffers from a mental abnormality such that he is a dangerous sex offender requiring confinement (see Mental Hygiene Law § 10.03 [i]).
Although there is competing evidence in the record regarding the extent to which that information impacted deliberations, the record supports the court's conclusion that it affected at least one juror—i.e., the foreperson. Inasmuch as unanimous verdicts are required in Mental Hygiene Law article 10 cases (see § 10.07 [d]), that at least one juror was influenced by the foreperson's failure to disclose certain relevant information established that petitioner was denied substantial justice and that a new trial should be granted. Ultimately, where, as here, the trial court has overseen the jury selection process, heard all of the evidence, and conducted a posttrial evidentiary hearing on the issue of juror misconduct, we should defer to its determination, in light of its "superior opportunity to evaluate the proof and the credibility of the witnesses" (Carter v Shah, 31 AD3d 1151, 1151-1152 [4th Dept 2006] [internal quotation marks omitted]). Thus, we conclude that the court did not abuse its discretion in granting petitioner's motion for a new trial in the interest of justice.
Entered: August 20, 2020
Mark W. Bennett
Clerk of the Court