S & S MEDIA, INC., Appellant, v VANGO MEDIA, INC., et al., Respondents.

First Department, January 19, 1982

### APPEARANCES OF COUNSEL

*Sidney N. Weiss* of counsel (*David E. Schwab, II,* with him on the brief; *Schwab Goldberg Price & Dannay,* attorneys), for appellant.

*Jay W. Seeman* of counsel (*Beverly Van Ness* with him on the brief; *Singer Hutner Levine & Seeman, P.C.,* attorneys), for respondents.

SULLIVAN, J.

The issue before us is whether Special Term properly granted summary judgment dismissing three causes of action based upon defendant Vango Media, Inc.'s alleged breach of a written agreement dated April 1, 1971, between itself and plaintiff, S & S Media, Inc. We find that questions of fact are presented as to the intentions of the parties when they signed the contract, by which Vango agreed, in the event it obtained "the right to advertise on the back of taxicabs", to pay S & S $1 per month for every taxicab "which actually has advertising on it." For this payment S & S was to provide the necessary services to insure that the advertising for which Vango contracted was actually displayed on the taxicabs.

At the time the contract was executed exterior advertising on medallion taxicabs was prohibited in New York City. The contract, which had a 10-year term, was negotiated by Vango's principal, J. Rembrandt George, and Eugene Stattler, a retired New York City detective, who already was doing surveillance work for the taxi industry. George had seen advertising on the rear trunk lid or deck of taxicabs on Long Island and San Francisco, and, anxious to establish taxicab advertising in New York City, had discussed its possibilities with one Ludwig Schilling, also a former New York City detective, who introduced George to Stattler, who, it was felt, "might be able to assist George in making appropriate contacts in the industry and in bringing his ideas to fruition." As the plans began to develop for the advertising project, which required the approval of the New York City Taxi and Limousine Commission and the City Council, Schilling and Stattler organized S & S and entered into the April 1, 1971 agreement.

Thereafter, a special study of advertising in the taxicab industry was conducted by the New York Taxi and Limousine Commission, as mandated by section 2323 of the Administrative Code of the City of New York. The commission's report recommended "that an illuminated A-frame, parallel to pedestrians is the most viable display option." The report also cast doubt on the economic feasibility of rear deck poster advertising. Under subdivision e of section

2324 of the Administrative Code the authority to promulgate "such rules and regulations as are necessary to carry out the provisions of" the law permitting exterior advertising on taxicabs, "including but not limited to the type and size of any advertising matter", is delegated to the commission.

Legislative approval for taxicab advertising was not obtained until May of 1975. S & S thereupon sought to renegotiate an extension of the contract to take into account the four-year passage of time that had been expended in getting the necessary legislation authorizing taxicab advertising. At that time Vango's comptroller challenged the validity of the contract by claiming that the agreement had never been ratified by Vango's board of directors. No claim was made that S & S's rights under the contract were limited to advertising "on the back of taxicabs". Thereafter, Vango-placed advertising began to appear on the roofs of taxicabs in New York City. Vango has never used the rear deck poster type of advertising. In mid-November, 1975, S & S mailed a surveillance report to Vango, but Vango has steadfastly refused to pay for S & S's services in accordance with the April 1, 1971 agreement. As a result S & S commenced this action seeking punitive damages in the sum of $8,640,000 against George, against whom causes of action in fraud, as well as breach of contract, are alleged, and compensatory damages against both Vango and George, jointly and severally, in the sum of $2,880,000.

Defendants, arguing that the placing of advertising on the roofs of taxicabs is not embraced by the 1971 contract, since the agreement speaks in terms of advertising "on the back of taxicabs", moved for summary judgment dismissing the complaint. Special Term agreed, holding that "the back of taxicabs" is susceptible of only one meaning, and granted summary judgment.

■ In our view the meaning of the expression "the back of taxicabs" is of questionable significance in determining liability under the contract of April 1, 1971. The agreement must be considered in the light of the circumstances existing at the time of its execution. At that time both parties, based on their experience, proceeded on the prem-

ise that exterior advertising, if authorized at all, would be limited to the rear deck of the taxicab. Vango had already applied for "the right to advertise on the back of taxicabs". S & S's principals, Stattler and Schilling, had been instrumental in the planning of the venture, and the agreement to pay for auditing and monitoring services in verifying that the advertising was being properly displayed was a form of compensation for their assistance in the effort to bring the taxicab advertising concept to reality. Neither party was in a position to anticipate in 1971, the time of the contract's execution, that the Taxi and Limousine Commission would approve rooftop advertising rather than rear deck advertising. "Contracts are made by people about real transactions and they should be interpreted in accordance with their reasonable intentions at the time. So, too, should their reasonable expectations be respected as to that which was not contemplated but which should have been foreseen." (*Rosenthal Jewelry Corp. v St. Paul Fire & Mar. Ins. Co.,* 21 AD2d 160, 167.)

It seems obvious that the parties were primarily concerned about memorializing an agreement which would provide for compensation to Stattler and Schilling should the effort to acquire the right to exterior advertising on taxicabs be successful. In reducing their agreement to writing, the parties described this advertising right in the lexicon of their common experience: exterior taxicab advertising meant advertising "on the back of taxicabs". Once that valuable right was acquired, the location of the advertising would be immaterial. In support of their argument defendants point out that rooftop advertising is more costly. But any additional expense is passed on to the advertiser and would in no way affect Vango's margin of profit. Defendants do not argue that rooftop advertising dispenses with the need for monitoring.

■ "Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." (*Atwater & Co. v Panama R.R. Co.,* 246 NY 519, 524.) To do otherwise would be to subject our reason to what CARDOZO termed

"the tyranny of labels." (*Snyder v Massachusetts,* 291 US 97, 114.) "It is well settled that in construing the provisions of a contract we should give due consideration to the circumstances surrounding its execution, to the purpose of the parties in making the contract, and, if possible, we should give to the agreement a fair and reasonable interpretation". (*Aron v Gillman,* 309 NY 157, 163; see, also, 3 Corbin, Contracts, pp 78-79, 88-91; 3 Williston, Contracts [rev ed], pp 1780-1788.) "[W]hen the sense in which the words of a written instrument are used, or the sense in which the promisor had reason to believe the promisee understood them, is determinable from the relation of the parties, facts apart from it, and the surrounding circumstances, it must be found and fixed by the jury." (*J. & R. Lamb v Norcross Bros. Co.,* 208 NY 427, 431.)

Although inclined to the view that the location of the advertising on the taxicab was not critical and is being used by Vango as a loophole to avoid its obligations under the contract, we believe that, rather than grant partial summary judgment to S & S on the liability issue on the contract claims and remand for a determination of damages, better practice compels denial of summary judgment and a trial of the issue of the parties' intent in executing this contract. On a motion for summary judgment "[i]ssue-finding, rather than issue-determination, is the key to the procedure." (*Esteve v Abad,* 271 App Div 725, 727.)

In remanding for trial we take note of a somewhat analogous situation in *Gallo v Johnson Oil Co.* (11 AD2d 718). There the plaintiff sued for specific performance of a contract under which defendants had agreed to furnish him with a complete system for retailing gasoline and motor fuel to the general public, to lend him the equipment constituting the system, and to supply him with gasoline. During the contract period a new type of gasoline pump came into existence. The plaintiff demanded that defendants at their expense install and lend to him such new pump. The court affirmed, without opinion, a judgment in plaintiff's favor. The dissent argued that since the pump had not been mentioned in the contract the court could not enlarge its terms and compel defendants to furnish the pump. Like the rooftop advertising in this case the new

type of gasoline pump was not mentioned in the contract, presumably because at the time the contract was entered it did not exist. Delivery of the new pump, however, was apparently essential for plaintiff to sell the gasoline, and the court directed defendants to supply the equipment.

Finally, in expressing our view of the liability aspect of the contractual claims, we indicate no opinion as to damages except to note that, from our review of the record, the amounts demanded in the *ad damnum* clause appear to be highly inflated and unsupported in the record.

Since Special Term properly dismissed the fourth cause of action, based on fraud, on the ground that it is time barred, the order and judgment, Supreme Court, New York County (ASCH, J.), entered November 25, 1980, and December 2, 1980, respectively, should be modified, on the law, with costs and disbursements, to the extent of denying defendants' motion for summary judgment dismissing the first three causes of action and, except as thus modified, affirmed.

LYNCH, J. (dissenting). I would affirm for the reasons stated by Special Term. The term "on the back of taxicabs" is susceptible of only one meaning and "[e]ffect must be given to the intent as indicated by the language employed" (*Matter of Western Union Tel. Co.*, 299 NY 177, 184).

MURPHY, P.J., KUPFERMAN, and MARKEWICH, JJ., concur with SULLIVAN, J.; LYNCH, J., dissents in an opinion.

Order and judgment, Supreme Court, New York County, entered on November 25, 1980 and December 2, 1980, respectively, modified, on the law, to the extent of denying defendants' motion for summary judgment dismissing the first three causes of action, and, except as thus modified, affirmed. Plaintiff-appellant shall recover of defendants-respondents $75 costs and disbursements of these appeals.