Bich v Bich (2024 NY Slip Op 50234(U))

[*1]

Bich v Bich

2024 NY Slip Op 50234(U)

Decided on March 5, 2024

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2024
Supreme Court, New York County

Veronique Bich, Plaintiff,

against
Bruno Bich, Defendant.

Index No. 652092/2020

Glenn Agre Bergman & Fuentes LLP, New York, NY (Michael Paul Bowen of counsel), for plaintiff.
Ballard Spahr LLP, New York, NY (James V. Masella, III, Brittany M. Wilson, Kelly McGlynn and Joseph J. Bailey of counsel), for defendants.
Charish Law Group P.C., New York, NY (Michael A. Charish of counsel), for intervenors.

Gerald Lebovits, J.

The following e-filed documents, listed by NYSCEF document number (Motion 021) 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 470, 471, 472 were read on this motion to PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 022) 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 473, 474, 475 were read on this motion to PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 023) 459, 460, 461, 462, 463, 464, 465, 466, 467, 476, 477, 478 were read on this motion to PRECLUDE
The following e-filed documents, listed by NYSCEF document number (Motion 024) 417, 418, 419, 420, 421, 422, 468, 479, 480, 481, 482, 483 were read on this motion to PRECLUDE
The following e-filed documents, listed by NYSCEF document number (Motion 025) 485, 486, 487, 488, 487, 488, 489, 490, 491, 492 were read on this motion to QUASH.
This action arises from alleged breaches of a post-nuptial agreement between plaintiff, Veronique Bich, and the late Bruno Bich, plaintiff's ex-husband. After Mr. Bich's death, the Bich children (Gonzalve, Charles, and Guillaume Bich) were substituted as defendants in their representative capacity as personal representatives of Mr. Bich's estate. For simplicity, this order refers to defendants as the "Estate" except as otherwise indicated. Separately, the Bich children sought, and were granted, permission to intervene derivatively on Grenelle LLC' behalf. (See Bich v Bich, 2022 NY Slip Op 50079[U], at *3 [Sup Ct, NY County 2022], affd as mod on other grounds 220 AD3d 402 [1st Dept 2023].) The assets of Grenelle, which is wholly owned by members of the Bich family, are at issue in the disputes between Ms. Bich and the Estate over the terms of, and performance under, the post-nuptial agreement. For simplicity, this decision refers to intervenors collectively as "Grenelle."
The action is about to go to trial, with jury selection scheduled to begin shortly. In preparation for trial, the three parties to the action have filed four motions in limine and a motion for a protective order in response to a trial subpoena. On motion sequence 021, the Estate seeks to preclude Ms. Bich from introducing evidence on several subjects and from one particular witness. On motion sequence 022, the Estate seeks to preclude Ms. Bich from introducing evidence in support of one category of her claims. On motion sequence 023, Grenelle moves to preclude Ms. Bich from introducing certain types of evidence about it. On motion sequence 024, Ms. Bich moves to preclude the Estate from introducing evidence supporting one of its counterclaims. On motion sequence 025, the Estate's personal representatives seek a protective order quashing or modifying trial subpoenas Ms. Bich served on them.
The motions are consolidated for disposition. Motion sequence 021 is granted in part, denied in part, and denied in part without prejudice. Motion sequence 022 is denied. Motion sequence 023 is granted. Motion sequence 024 denied as academic. Motion sequence 025 is granted in part and denied in part.
DISCUSSION
I. The Estate's First Motion to Preclude (Mot Seq 021)
On motion sequence 021, the Estate moves to preclude Ms. Bich from introducing evidence or testimony on three subjects and from introducing testimony of a particular potential witness. These four aspects of the motion will be considered in turn. The motion is granted in part and denied in part.
A. Communications or Transactions Between Ms. Bich and Mr. Bich
The Estate seeks to preclude Ms. Bich from introducing documents or testimony about her communications and transactions with Mr. Bich before his death. The Estate argues that this evidence is barred by the Dead Person's Statute, CPLR 4519; and that the Estate has not waived, and will not, waive, the statute's protections. This court agrees that the Estate has not yet waived the protections of CPLR 4519. (See Bich v Bich, 2024 NY Slip Op 50186[U], at *4 n 7 [Sup Ct, NY County 2024] [discussing circumstances under which a CPLR 4519 waiver may, and may not, occur].) But the court declines at this time to rule categorically before trial on the admissibility of documents or testimony that might be subject to the protections of the statute.
CPLR 4519's applicability is heavily fact-specific and context-dependent. Although the Estate makes strong arguments why Ms. Bich's testimony on the topics at issue would be inadmissible under the statute, ruling now on those admissibility questions essentially in the abstract would be premature. And without meaning to slight the Estate's representation that it will not waive the protections of CPLR 4519, the court cannot presume before trial that no inadvertent waiver will occur.[FN1]

The court concludes, therefore, that questions of admissibility and waiver under the Dead Person's Statute are better dealt with at trial on a fully developed record. This branch of the Estate's motion is denied, without prejudice to assertion at trial of specific CPLR 4519 objections.
B. Allegations of Domestic Violence
The Estate seeks to preclude Ms. Bich from introducing documents or testimony "relating to allegations that Bruno [Bich] physically threatened or was violent toward her." The Estate contends that this type of evidence is not relevant to the claims and defenses in this action and would be unduly prejudicial. The court agrees.
In opposing the motion, Ms. Bich argues that that the "difficulties in the Bichs' marriage are relevant in that they led directly to the marital agreement at issue and they inform Bruno Bich's material breaches." Therefore, she says, this evidence "tends to make Veronique Bich's version of the facts surrounding the agreement and Bruno Bich's failure to perform either more or less likely." (NYSCEF No. 470 at 5.) This general, attenuated argument for relevance is unpersuasive.[FN2]
And an obvious potential exists for this contract action to be unduly prejudiced by putting before the jury evidence about allegations of domestic violence.
The Estate also strongly disputes the allegations, contending, among other things, that they are refuted by eyewitness testimony from the Bichs' children. (See NYSCEF No. 424 at 11.) The court takes no position on each party's respective credibility. But the possibility of a distracting mini-trial about domestic-violence-related charges and counter-charges only bolsters the court's view that evidence on this issue should be excluded. This branch of the Estate's motion is granted.
C. Value of Marital Property
The Estate argues that "any testimony or evidence relating to the value of marital property" should be excluded, because the underlying contract provides that the valuation issue "is to be determined pursuant to an appraisal process," rather than at the upcoming trial. (NYSCEF No. 424 at 17.) In response, Ms. Bich represents that she does not now intend to offer fact or expert testimony on these valuation issues in her case in chief. (See NYSCEF No. 470 at 8.) Given that representation, this branch of the Estate's motion is denied, without prejudice to the motion's being renewed at trial should this issue recur.
D. Testimony of Melinda Meyers
The Estate contends that Melinda Meyers, Ms. Bich's accountant, should be precluded from testifying at trial because she refused to appear in response to a subpoena. The court disagrees. It is undisputed that Meyers made a substantial document production in response to a document subpoena served before Ms. Bich filed her note of issue. The Estate's motion is instead based on Meyers's refusal to comply with a post-note testimonial subpoena. As the Estate implicitly concedes (see NYSCEF No. 424 at 16), however, the subpoena on its face gave Meyers only 12 days advance notice—not the 20 days required by CPLR 3106 (b) and CPLR 3107. Given that short service, Meyers was not required to appear for the subpoenaed deposition. Her refusal to do so is not grounds to preclude her from testifying at trial. This branch of the Estate's motion is denied.
II. The Estate's Second Motion to Preclude (Mot Seq 022)
On motion sequence 022, the Estate moves to preclude Ms. Bich from introducing evidence that (i) she is entitled to dividends paid on Société Bic shares held by Grenelle and by the Bruno Bich Trust; and (ii) she is entitled retroactively to an additional income distribution by Grenelle based on her interest in the LLC.
The Estate's argument, in essence, is that the language of the underlying post-nuptial agreement and the Grenelle operating agreement show unambiguously that Ms. Bich does not have any valid claim to these sums. Absent a claim, the Estate contends, any evidence that might support such a claim is irrelevant and inadmissible. This argument, though, as Ms. Bich argues in opposition, shows that the motion is not about the admissibility of evidence, properly speaking. Rather, it is a contention that several of Ms. Bich's damages claims fail as a matter of law and thus should not be put before the jury at trial. And that contention is best asserted as a trial motion for directed verdict or for judgment as a matter of law, rather than as the underlying premise of a pretrial motion in limine. The motion is denied.
[*2]III. Grenelle's Motion to Preclude (Mot Seq 023)
On motion sequence 023, Grenelle moves to preclude Ms. Bich from introducing evidence at trial about management and control of the LLC, the amendment to the LLC's operating agreement, and "Ms. Bich's status, rights, and powers in the company." (NYSCEF No. 460 at 1.) Grenelle contends that because the court dismissed Ms. Bich's counterclaims against it related to these issues, the issues have no relevance to the questions that will be resolved at the upcoming trial—and therefore evidence relating to those issues is inadmissible. (Id. at 1, 3-7; see Bich v Bich, 2023 NY Slip Op 50303[U], at *7-12 [Sup Ct, NY County 2023] [dismissing Ms. Bich's counterclaims against Grenelle].)
As an initial matter, Ms. Bich argues in opposition that Grenelle has "no standing to make such a motion." According to Grenelle, its claims, and her counterclaims, will not be at issue at the upcoming trial. (NYSCEF No. 476 at 10-11.) Nevertheless, Ms. Bich provides no authority for the proposition that a party to an action may not make a motion about admissibility of evidence at a trial in the action if that party's claims will not be resolved at the trial. And there are obvious benefits from the standpoint of economy in determining before trial the admissibility of evidence on these topics. The court concludes, therefore, that it should reach the merits of Grenelle's motion in limine.
On the merits, the court agrees with Grenelle that the information it seeks to exclude is inadmissible as irrelevant to the claims and defenses to be tried. Ms. Bich identifies two ways in which the information is assertedly relevant. First, she argues that the information goes to "the Estate's implementation (and lack thereof) of the Grenelle provisions" of the postnuptial agreement. (Id. at 11.) But Ms. Bich has not shown that the changes made to Grenelle's management, ownership structure, and control, beginning in March 2020, go to whether or not the Estate complied with the terms of the postnuptial agreement relating to Grenelle.
The timing of the Estate's (belated) transfer to Ms. Bich of Mr. Bich's 98.983798% interest in Grenelle is certainly relevant to the question of the Estate's performance (or not) of its obligations under the postnuptial agreement. Evidence on that point is admissible. Still, this court does not believe that the issue of the transfer's timing or timeliness is within the scope of Grenelle's motion in limine. This court construes the motion as limited to the issues raised by Ms. Bich's now-dismissed counterclaims about the nature of the interest that was transferred and related topics such as "management, the managing director, the Operating Agreement, membership status, and transferee status." (NYSCEF No. 460 at 6; cf. Bich, 2023 NY Slip Op 50303[U], at *8-9 [discussing these topics].) And those topics are not relevant to the claims and defenses in this action as between Ms. Bich and the Estate with respect to compliance with the postnuptial agreement.
Second, Ms. Bich argues, the information is "indisputably relevant to the estate's claim that Ms. Bich is responsible for paying the (already paid) Grenelle Debt despite her diminished role in and reduced benefit from that former marital property." (NYSCEF No. 476 at 11.) The court is not persuaded that the information is relevant at all—let alone indisputably so.
The question of Ms. Bich's obligation, if any, to pay the amounts designated in the postnuptial agreement as the "Grenelle Debt" turns on (i) when that debt was to be transferred to her under the agreement, May 2008 (30 days after execution) or August 2017 (at the time of the Operative Event); and (ii) if the latter, whether she must indemnify the Estate under the agreement for payments made by Mr. Bich between 2008 and 2017. (See Bich, 2023 NY Slip Op [*3]50303[U], at *4-5 [noting these questions].) The Appellate Division, First Department, has held that given the postnuptial agreement's internal inconsistency on this issue, "the parties' intent underpinning these conflicting provisions must be addressed at trial." (Bich v Bich, 220 AD3d 402, 403 [1st Dept 2023].) But either way, the intent at issue is the parties' intent at drafting of the agreement in 2008. (See Bich, 2023 NY Slip Op 50303[U], at *10, citing S & S Media, Inc. v Vango Media, Inc., 84 AD2d 356, 359-360 [1st Dept 1982].) Thus, necessarily, the changes in Grenelle's management structure and control that first occurred in 2020 cannot shed light on the meaning of the language about the Grenelle Debt in the postnuptial agreement.
Grenelle's motion, construed by the court as set forth above, is granted.
IV. Ms. Bich's Motion to Preclude (Mot Seq 024)
On motion sequence 024, Ms. Bich moves to preclude the Estate from offering evidence related to "alleged damage, alteration, or devaluation to any artwork" that underlies one of the Estate's counterclaims. (NYSCEF No. 468 at 1.) Ms. Bich argues that because the Estate neither described that damage in response to an interrogatory on the topic nor properly disclosed the Estate's planned expert testimony on the issue, the Estate should be prevented from introducing evidence on the subject at trial.
The court does not reach the merits of this motion. In moving for a protective order to quash or modify trial subpoenas served by Ms. Bich (discussed further in Part V, infra), the Estate stated that it is "seek[ing] only nominal damages of $1 on its claim regarding the damages Plaintiff caused to the artwork." (NYSCEF No. 486 at 7 ¶ 23.) This statement led the court on March 3, 2024, to request, by email copied to all parties, that the Estate indicate what issues it believes remain for trial with respect to the 28 artworks if the Estate is seeking only nominal damages. In response, the Estate filed a letter on March 4 stating that the Estate will "seek only nominal damages related to this counterclaim," and that it therefore "does not believe there are any triable issues remaining relating to" the counterclaim. (NYSCEF No. 495 at 1, 2.)
Given the Estate's representations that it seeks only nominal damages relating to the 28 artworks—and that the Estate will therefore not be presenting expert testimony in support of a damages claim with respect to the artworks—Ms. Bich's motion to preclude is denied as academic.
V. The Estate's Motion for a Protective Order (Mot Seq 025)
On motion sequence 025, the Estate moves for a protective order quashing or modifying documentary and testimonial trial subpoenas served by Ms. Bich on the three Bich children. (See NYSCEF No. 485 [notice of motion].)
As an initial matter, 22 NYCRR 202.7 (a) (2) and (c) require that a party filing a discovery motion represent in an affirmation either that counsel for the moving party has conferred in good faith with counsel for the opposing party, or "indicate good cause why no such conferral with counsel for opposing parties was held." The Estate concedes that it did not meet and confer with Ms. Bich before filing this motion. (See NYSCEF No. 492 at ¶ 2.) It argues that good cause exists for the lack of conferral.
In particular, the Estate represents that its counsel (i) sought to negotiate the scope of the testimonial subpoenas; (ii) provided detailed objections (and offers to negotiate) with respect to [*4]the scope of the documentary subpoenas, and (iii) made themselves available for a meet-and-confer session. (See id. at ¶¶ 4-7.) With respect to the testimonial subpoenas, the Estate contends that Ms. Bich's sole response was unsatisfactory, thereby suggesting that any further discussion on the issue would be futile. (See id. at ¶ 6.) With respect to the documentary subpoenas, the Estate represents that the sole response to their objections and stated negotiating position was an email from Ms. Bich's counsel stating, in full, "If you fail to comply with the subpoenas you are in contempt. You best do your research on trial subpoenas." (Id. at ¶ 8, quoting NYSCEF No. 489 at 1.)
Having reviewed the correspondence between counsel relied upon by the Estate, this court agrees that good cause exists why no conferral was held prior to the Estate's filing this motion. On the merits of the motion, the court concludes as follows.
A. The Branch of the Motion Directed to the Testimonial Subpoenas
The testimonial subpoenas (reproduced at NYSCEF No. 487) direct each of the three Bich children to appear in court on the first day of jury selection and, "upon any recess at adjourned dates and times, to give testimony in this action on the part of" Ms. Bich in the action. (NYSCEF No. 487 at 2, 3; id. at 5, 6; id. at 8, 9.)
When counsel for the Estate asked counsel for Ms. Bich to indicate "what dates you expect to call them as witnesses so that we can confirm there are no scheduling conflicts," the response was that Ms. Bich would need all three children "in court on day one with the materials they are required to bring to court." (NYSCEF No. 489 at 3-4.) Counsel for Ms. Bich went on to say that if the Estate stipulated to the authenticity and admissibility of a different set of documents (unrelated to the subpoenas), Ms. Bich could give "a rough idea on when we require the other 2 to be in Court for their testimony." (Id. at 3.) The Estate argues that given the potential for scheduling conflicts, Ms. Bich's position with regard to the testimonial subpoenas is unreasonable and unduly burdensome. This court agrees.
The court recognizes that witness scheduling (and trial scheduling more broadly) is difficult to predict perfectly. Yet given necessary external demands on witnesses' time and availability (and related logistical issues such as plane flights), a party wishing to call as witnesses representatives of the opposing party must attempt to provide more than just a "rough idea" of when they intend to do so. And they may not condition doing so on receiving evidentiary concessions from that opposing party. Nor does Ms. Bich now provide any objection to the request to quash or modify the testimonial subpoenas, although she opposes other aspects of this motion.
The branch of the personal representatives' motion seeking to quash or modify the testimonial subpoenas is granted to the extent that the subpoenas are quashed unless Ms. Bich provides the Estate by 7:00 p.m. on March 5, 2024, with the dates on which she plans to call the three Bich children as witnesses.
B. The Branch of the Motion Directed to the Documentary Subpoenas
Each of the three documentary subpoenas has three items in common; the subpoena directed to Gonzalve Bich adds a fourth item. (See generally NYSCEF No. 487 at 2-10.) The Estate argues that these items seek information that is (i) more properly the subject of pretrial [*5]discovery; (ii) irrelevant; (iii) unduly burdensome; or (iv) all the above. This court agrees with the Estate as to the three common items; but disagrees with respect to the fourth item directed to Gonzalve Bich alone.
1. The three items common to the documentary subpoenas
The three items in common are as follows. First, Ms. Bich seeks the "original Art Binders" maintained by the Estate's representatives or their agents, "including the Art Binders that include documentation pertaining to any and all items of art or artwork that the Estate is alleging at trial" to have been damaged, altered, or devalued by Ms. Bich. (NYSCEF No. 487 at 2 ¶ 1 [emphasis added].) Second, any documentation in the possession of the Estate or the personal representatives (or their agents) "concerning the purchase, authenticity, valuation, ownership, and/or condition of any item" of the allegedly damaged artwork, "including any documents concerning the condition of each item" when it was purchased. (Id. at ¶ 2.) Third, for "each item," the "original artwork." (Id. at 3 ¶ 3.) The subpoena demands that all these materials and objects be brought to court so that they may "be entered into evidence and inspected by the Jury." (Id. at 2.)
1. The first, or "Art Binders," item seeks on its face production of substantial material that is not at issue at trial. As Ms. Bich successfully argued to this court with respect to the Estate's prior motion for issuance of a letter of request, evidence about valuation of artwork is not relevant except with respect to the specific, enumerated artworks that are the subject of particular claims or defenses in this action. (See Bich v Bich, 2023 WL 7346325, at *1 [Sup Ct, NY County Nov. 2, 2023].[FN3]
) And, as discussed above, Ms. Bich's opposition to the Estate's second motion in limine represents that she "has no present intent to offer" evidence "on her case in chief" about "the value of various marital property not at issue in this trial." (NYSCEF No. 470 at 8.)
Nonetheless, Ms. Bich has subpoenaed all "Art Binders"—expressly making clear in the subpoena that her request is not limited to those binders with documentation pertaining to the 28 artworks that are the subject of the Estate's damage/devaluation counterclaim.[FN4]
Additionally, this subpoena item requests production of the original art binders, not merely high-quality reproductions—notwithstanding that Ms. Bich had a full opportunity, prior to filing her note of issue, to inspect the binders and obtain copies of the pages that she believed to be relevant to the claims and defenses to be tried. (See NYSCEF No. 486 at 5 ¶¶ 16-17 [discussing this point].)
In opposing this branch of the motion, Ms. Bich does not explain the binders' relevance to triable issues beyond the 28-artworks counterclaim. Ms. Bich contends, in effect, that producing the original versions of the binders is required by the Best Evidence Rule. (See NYSCEF No. 494 at 3.) This court disagrees. The rule "simply requires the production of an original writing where its contents are in dispute and sought to be proven." (Schozer v William [*6]Penn Life Ins. Co. of NY, 84 NY2d 639, 643 [1994] [emphasis added].) Ms. Bich does not identify a dispute with respect to the contents of the binders. Regardless, CPLR 4539 (b), which Ms. Bich does not discuss, permits the introduction of scanned copies of writings, if authenticated by competent testimony or affidavits. Ms. Bich does not contend that inaccuracies exist in the scanned copies of sections of the binders that the Estate made for her during discovery; nor that the Estate will be unable to authenticate any scanned copies that will be used at trial.
Further, as discussed above in Part IV, the Estate has now represented that it will not present evidence of monetary harm resulting from the alleged damage to the 28 artworks underlying the damage/devaluation counterclaim.[FN5]

In these circumstances, the court sees no basis to require the Estate to produce the subpoenaed binders. The personal representatives' request to quash this item of the subpoena is granted.
2. The second item seeks documentation related to the 28 artworks. Given the Estate's representation that it will not be introducing evidence of monetary harm at trial in support of that counterclaim, these documents are irrelevant to the issues to be tried. The personal representatives' motion to quash this subpoena item is granted.
3. The third item seeks to require the Estate's personal representatives to bring to court the 28 artworks—worth millions of dollars—so that the jury may examine them. These works are not writings or similar documents, and thus are not subject to the Best Evidence Rule (as Ms. Bich would have it, see NYSCEF No. 494 at 3). And the logistical burdens imposed by this item (in terms of security, transport, insurance, and the like) are obvious. This court would therefore be inclined to grant the motion to quash even if issues relating to these artworks still remained to be tried. And since no such issues remain, the personal representatives' request to quash this subpoena item is granted.
2. The additional item in the documentary subpoena directed to Gonzalve Bich
The documentary subpoena served on Gonzalve Bich contains a fourth item, demanding documents "sufficient to show the identity of the recipient/payee account, including the owner of such account, and/or the identity of the recipient/payee . . . which/who received the transfer of funds" from Gonzalve Bich (or a trust connected to him) for the purchase of real property in Norwalk, Connecticut. (See NYSCEF No. 487 at 3 ¶ 4.) Movant argues that this subpoena item is an improper attempt to obtain what is in substance pretrial disclosure. (See NYSCEF No. 486 at 7 ¶ 24.) This court is not persuaded.
As Ms. Bich contends, the purpose of a documentary trial subpoena is to "command[] a person to bring relevant materials to trial in order to introduce them into evidence." (NYSCEF No. 494 at 2 ¶ 5; see Franklin v Judson, 96 AD 607, 607 [1st Dept 1904] [finding that a subpoenaed witness can also "be subpoenaed to produce his books, only so that he can, by reference to them, answer questions pertinent to the inquiry being conducted before the court"].) [*7]Thus, trial subpoenas may be used only "to obtain documents that [are] themselves evidence," not to "ascertain the existence of evidence." (People v Wallace, 239 AD2d 272, 273 [1st Dept 1997].) And a party may not use trial subpoenas as a device to obtain wide-ranging discovery that could—and should—have been gathered through pretrial disclosure. (See Tribeca Space Mgrs., Inc. v Tribeca Mews Ltd., 200 AD3d 626, 629 [1st Dept 2021].)
Here, though, Ms. Bich has subpoenaed a discrete, targeted set of documents. She is not seeking to learn whether evidence exists that the purchase price for the Norwalk property was paid to a particular individual or account, but to require Gonzalve Bich to bring to court that evidence itself (in the form of a wire transfer, cancelled check, or the like). It may be that this evidence could have been obtained through pretrial discovery. But the court declines to rely on that ground to quash the subpoena when, as here, Ms. Bich is seeking "specific documents that are relevant and material to facts at issue" at trial. (Matter of Terry D., 81 NY2d 1042, 1044 [1993].) The request to quash this subpoena item is denied.
Accordingly, it is
ORDERED that the Estate's first motion to preclude (mot seq 021) is granted in part, denied in part, and denied in part without prejudice, as set forth above; and it is further
ORDERED that the Estate's second motion to preclude (mot seq 022) is denied; and it is further
ORDERED that Grenelle's motion to preclude (mot seq 023) is granted; and it is further
ORDERED that Ms. Bich's motion to preclude (mot seq 024) is denied as academic; and it is further
ORDERED that the branch of the Estate's personal representatives' motion seeking to quash or modify Ms. Bich's testimonial trial subpoenas (mot seq 025) is granted to the extent set forth above; and it is further
ORDERED that the branch of the Estate's personal representatives' motion seeking to quash or modify the items of Ms. Bich's documentary trial subpoenas that are common to each subpoena (mot seq 025) is granted, and these subpoena items are quashed in part and modified in part, as set forth above; and it is further
ORDERED that the branch of Gonzalve Bich's motion seeking to quash or modify the fourth item of Ms. Bich's documentary trial subpoena served on him (mot seq 025) is denied.
DATE 3/5/2024

Footnotes

Footnote 1:For the parties' benefit at trial, the court notes the following principles with respect to waiver of CPLR 4519. Waiver occurs if an interested party, such as a personal representative of an estate, testifies at trial on direct (or redirect), introduces testimony at trial (for example in the form of a deposition), or elicits testimony at trial from an interested party or person about a personal transaction or communication with the decedent. (See Matter of Wood's Estate, 52 NY2d 139, 145-146 [1981].) Waiver does not occur if an interested party introduces documentary evidence relating to a transaction involving the decedent (see id. at 145; Matter of Nealon, 104 AD3d 1088, 1090 [3d Dept 2013]); if the personal representative gives testimony about communications with the decedent on cross-examination by the adverse party (Sepulveda v Aviles, 308 AD2d 1, 11 [1st Dept 2003]); if the personal representative or another interested party testifies only as to his or her own observations, as opposed to transactions or communications with the decedent (see id.); or if a disinterested party testifies about communications with the decedent (see Matter of Estate of Buchanan, 245 AD2d 642, 647 [3d Dept 1997]). When waiver occurs, it is limited in scope to the particular transaction(s) or communication(s) about which the protections-waiving testimony was given. (See Herrmann v Sklover Grp., Inc., 2 AD3d 307, 307 [1st Dept 2003].)

Footnote 2:Nor does this court agree with Ms. Bich that these allegations should be deemed admissible as "background and context that will facilitate the jury's understanding of her evidence." (NYSCEF No. 470 at 5.)

Footnote 3:This decision, resolving motion sequence 017, can also be found at NYSCEF No. 345.)

Footnote 4:Nor does this item limit itself to those 28 artworks plus other specific, identified works, such as the Fra Angelico painting that underlies one of the Estate's counterclaims and which was the subject of Ms. Bich's second summary-judgment motion. (See Bich v Bich, 2024 NY Slip Op 50186[U] [Sup Ct, NY County 2024] [resolving that motion].)

Footnote 5:Any issues relating to the Estate's claim for attorney fees incurred in prosecuting this counterclaim (see NYSCEF No. 495 at 2) will be resolved by the court at an appropriate time based on written submissions from the parties, not tried to the jury.